Exhibit 1

1   MARK D. FOWLER, Bar No. 124235
    mark.fowler@dlapiper.com
2   ELIZABETH DAY, Bar No. 177125
    elizabeth.day@dlapiper.com
3   TIMOTHY LOHSE, Bar No. 177230
    timothy.lohse@dlapiper.com
4   SAL LIM, Bar No. 211836
    sal.lim@dlapiper.com
5   GREGORY J. LUNDELL, Bar No. 234941
    greg.lundell@dlapiper.com
6   BRIAN P. WIKNER, Bar No. 244292
    brian.wikner@dlapiper.com
7   DLA PIPER US LLP
    2000 University Avenue
8   East Palo Alto, CA  94303-2214
    Tel:  650.833.2000
9   Fax:  650.833.2001

10  Attorneys for Defendant and Counter-Plaintiff
    SAMSUNG ELECTRONICS CO., LTD.
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15
    WISTRON CORPORATION, a Taiwan         CASE NO.  C-07-04748 VRW
16  corporation
                                          **DEFENDANT AND COUNTER-**
17            Plaintiff and Counter-      **PLAINTIFF SAMSUNG ELECTRONICS**
              Defendant,                  **CO., LTD.'S NOTICE OF DEPOSITION**
18                                        **OF WISTRON CORPORATION**
         v.
19
    SAMSUNG ELECTRONICS CO., LTD., a
20  Republic of Korea corporation

21            Defendant and
              Counterclaim-Plaintiff.
22

23  SAMSUNG ELECTRONICS CO., LTD.,

24            Counterclaim-Plaintiff,

25       v.

26  WISTRON CORPORATION, and
    WISTRON INFOCOMM (TEXAS)
27  CORPORATION,

28            Counterclaim-Defendants.

1        PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

2    Procedure, plaintiff Samsung Electronics Co., Ltd. ("Samsung"), by its attorneys, will take the

3    deposition of Wistron Corporation ("Wistron") upon oral examination before a certified

4    shorthand reporter duly authorized to administer oaths at the offices of DLA Piper US LLP, 2000

5    University Avenue, East Palo Alto, California 94303.  The deposition will commence on May 19,

6    2008 at 10:00 a.m., and shall continue from day to day until completed.

7        PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(2) of the Federal

8    Rules of Civil Procedure, the deposition will also be recorded using audio-visual equipment.

9        PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal

10   Rules of Civil Procedure, Wistron shall designate one or more officers, directors, managing

11   agents, or employees to testify on behalf of Wistron as to each of the subjects listed in Exhibit A

12   hereto.

13

14   Dated:  April 7, 2008

                        DLA PIPER US LLP

15

16                           By _____

                          MARK D. FOWLER

17                             ELIZABETH DAY

                          TIMOTHY LOHSE

18                             SAL LIM

                          GREGORY J. LUNDELL

19                             BRIAN P. WIKNER

                          Attorneys for Defendant and Counter-Plaintiff

20                             SAMSUNG ELECTRONICS CO., LTD.

21

22

23

24

25

26

27

28

**EXHIBIT A**

**DEFINITIONS**

1. "WISTRON" means Wistron Corporation.

2. "SAMSUNG" means Samsung Electronics Co., Ltd.

3. "UNITED STATES CUSTOMER" means a company incorporated in the United States or having a place of business in the United States, or having a subsidiary or affiliated company incorporated in or having a place of business in the United States or any person located in the United States with whom WISTRON has made an agreement for the manufacture or sale of any partially or completely assembled notebook computer, main board, or "motherboard" for a notebook computer, or to whom WISTRON has sold or for whom WISTRON has manufactured any partially or completely assembled notebook computer or main board or "motherboard" for a notebook computer, including but not limited to Acer, Dell, Hewlett Packard, and Lenovo and their United States subsidiaries and affiliates.

4. The phrase "NOTEBOOK PRODUCTS" means any partially or completely assembled notebook computer, or main board or "motherboard" for a notebook computer sold in the United States or sold for importation into the United States by WISTRON or Wistron InfoComm (Texas) Corp., or made for or sold to any UNITED STATES CUSTOMER by WISTRON or Wistron InfoComm (Texas) Corp.

5. The phrase "IDENTIFIED NOTEBOOK" means those NOTEBOOK PRODUCTS listed in WISTRON's April 3, 2008 Supplemental Response to Samsung Interrogatory Nos. 1 and 2, and/or any NOTEBOOK PRODUCT identified in WISTRON's Sales and Configuration Summaries.

6. "RELATED PRODUCTS" means repair parts, replacement parts, upgrade parts, peripherals, and accessories suitable for use in or with a NOTEBOOK PRODUCT, and services on a NOTEBOOK PRODUCT that WISTRON or Wistron InfoComm (Texas) Corp. sold or provided.

7. The term "PATENTS-IN-SUIT" refers to United States Patent Nos. 5,333,273, 5,625,275, and 6,523,100.

**SUBJECTS**

1.    WISTRON's promotion, marketing, and business communications with customers and potential customers regarding the features, performance, attributes, or characteristics of each IDENTIFIED NOTEBOOK involving the use of special purpose keys or key combinations in a notebook computer.

2.    WISTRON's promotion, marketing, and business communications with customers and potential customers regarding the features, performance, attributes, or characteristics of each IDENTIFIED NOTEBOOK involving hardware and software components utilized in determining the memory speed of each memory module and in generating memory access signals and memory access timing signals to each memory module in a notebook computer.

3.    WISTRON's promotion, marketing, and business communications with customers and potential customers regarding the features, performance, attributes, or characteristics of each IDENTIFIED NOTEBOOK involving hardware and software components utilized in charging the battery in a notebook computer.

4.    The agreements (whether formal or informal, oral or written) between WISTRON and its UNITED STATES CUSTOMERs for the design, development, manufacture, supply, sale or offer to sell each IDENTIFIED NOTEBOOK, and RELATED PRODUCTS, including the communications leading to the agreements, the negotiations of the agreements, the terms of the agreements, amendments and modifications, and the activities of WISTRON and its UNITED STATES CUSTOMERs in performance of those agreements (such as designing and developing products, creating specifications, modifying specifications, providing forecasts and projections, placing orders, responding to orders, pricing, invoicing, shipment, delivery, payment, and performing patent infringement indemnity or warranty obligations).

5.    WISTRON's agreements (whether formal or informal, oral or written) with its UNITED STATES CUSTOMERs, or their distributors, representatives or agents regarding the transfer, delivery and shipment of each IDENTIFIED NOTEBOOK and RELATED PRODUCTS to those customers, their distributors, representatives or agents, and WISTRON's practices with respect to transfer, delivery and shipment of those products, including but not limited to the

1    transfer of title, the transfer of risk of loss, the location from which WISTRON ships, the location

2    to which WISTRON ships, the persons to whom WISTRON ships, the method and terms of

3    shipment and delivery, and the entities involved in shipment and delivery.

4        6.        WISTRON's understanding of and compliance with the laws and regulations

5    regarding the sale and use of IDENTIFIED NOTEBOOKS in the United States (such as

6    regulations regarding the electromagnetic emissions and communications standards),

7    WISTRON's designation on its IDENTIFIED NOTEBOOKS or elsewhere that they comply with

8    such United States laws and regulations, and WISTRON's representations to its UNITED

9    STATES CUSTOMERs that such products comply with such laws and regulations.

10        7.        WISTRON's knowledge and information regarding the features of notebook

11    computers that make them suitable or acceptable for use by consumers in the United States,

12    including but not limited to WISTRON's decision to design and manufacture IDENTIFIED

13    NOTEBOOKS having those features.

14        8.        WISTRON's agreements (whether formal or informal, oral or written) with its

15    UNITED STATES CUSTOMERs, or their distributors, representatives or agents, regarding

16    compliance with laws and regulations regarding the transfer, shipment, or sale of IDENTIFIED

17    NOTEBOOKS into the United States, including but not limited to customs, duty, and tax laws

18    and regulations, and WISTRON's activities regarding compliance with such laws and regulations.

19        9.        WISTRON's knowledge and information regarding whether the IDENTIFIED

20    NOTEBOOKS and RELATED PRODUCTS WISTRON made for or sold to its UNITED

21    STATES CUSTOMERs were to be shipped to or delivered into the United States, sold to

22    consumers in the United States, or used by consumers in the United States.

23        10.        WISTRON's knowledge and information regarding the percentage of

24    IDENTIFIED NOTEBOOKS WISTRON made for or sold to its UNITED STATES

25    CUSTOMERs that were sold or resold to consumers in the United States.

26        11.        The manner by which WISTRON and its UNITED STATES CUSTOMERs

27    determined the prices, quantities, features, performance, attributes and characteristics of each of

28    the IDENTIFIED NOTEBOOKS, including but not limited to the factors that influenced the

1  prices, quantities, features, performance, attributes and characteristics of the products WISTRON

2  supplied to those customers.

3     12.    The effect of changes in WISTRON's costs on the prices and quantities of each

4  IDENTIFIED NOTEBOOK that WISTRON made for, offered to sell to or sold to its UNITED

5  STATES CUSTOMERs.

6     13.    WISTRON's accounting and other business methods, forms, reports, and

7  terminology for compiling, maintaining, recording and analyzing financial data from 2002 to the

8  present, including those relating to plans, budgets, forecasts, standard costs, actual results, and

9  financial reports on a company-wide basis, for specific products or product lines, and for specific

10  accounts, contracts or customers.

11     14.    WISTRON's unit sales and sales revenue for each IDENTIFIED NOTEBOOK, for

12  all IDENTIFIED NOTEBOOKS, and for RELATED PRODUCTS.

13     15.    WISTRON's costs of production and sale for each IDENTIFIED NOTEBOOK,

14  for all IDENTIFIED NOTEBOOKS, and for RELATED PRODUCTS, including WISTRON's

15  cost of goods sold for each product by product name or number (including direct labor and

16  material costs, other direct or variable costs and their nature, and overhead and other fixed or

17  indirect costs and their nature), WISTRON's standard costs and associated variances, and the

18  manner in which WISTRON determines whether costs are direct or variable, or fixed or indirect

19  and the manner in which WISTRON determines the amount of and allocates overhead or other

20  costs to particular products.

21     16.    WISTRON's gross profits, gross margin, standard margin, and net income or net

22  profits before taxes for each IDENTIFIED NOTEBOOK, for all IDENTIFIED NOTEBOOKS,

23  and for RELATED PRODUCTS.

24     17.    WISTRON's gross profits, gross margin, standard margin, and net income or net

25  profits before taxes for each UNITED STATES CUSTOMER for each IDENTIFIED

26  NOTEBOOK, for all IDENTIFIED NOTEBOOKS, and for RELATED PRODUCTS of that

27  customer.

28     18.    WISTRON's expected, projected, or anticipated future IDENTIFIED

1  NOTEBOOKS and RELATED PRODUCTS unit sales, sales revenue, costs and profits as of the

2  date WISTRON first sold a IDENTIFIED NOTEBOOK and at or before August 2006, including

3  any estimates, projections, forecasts, budgets, marketing plans, strategic plans, or capital

4  expenditure plans or requests prepared prior to such dates and relating to a period including any

5  time after such dates.

6       19.    WISTRON's rate of return on invested capital and WISTRON's net income or net

7  profits during the period 2002 through the present.

8       20.    WISTRON's knowledge or information regarding the rate of return on invested

9  capital and the net income or net profits typically earned by manufacturers and sellers of

10  notebook computers during the period 2002 through the present.

11       21.    WISTRON's net income and net profits for its notebook computer business during

12  the period 2002 through the present.

13       22.    WISTRON's capital costs and other borrowing costs during the period 2002

14  through the present.

15       23.    The amounts that WISTRON has budgeted or set-aside for payment of potential

16  future damages or license payments to SAMSUNG with respect to the PATENT-IN-SUIT.

17       24.    The market in which WISTRON sold its IDENTIFIED NOTEBOOKS,

18  WISTRON's position in that market, manufacturers and sellers with whom WISTRON competes

19  in that market, and the features, performance, attributes and characteristics of the notebook

20  computers sold by those competing companies in that market relating to the use of special

21  purpose keys or key combinations in a notebook computer.

22       25.    The market in which WISTRON sold its IDENTIFIED NOTEBOOKS,

23  WISTRON's position in that market, manufacturers and sellers with whom WISTRON competes

24  in that market, and the features, performance, attributes and characteristics of the notebook

25  computers sold by those competing companies in that market relating to hardware and software

26  components utilized in determining the memory speed of each memory module and in generating

27  memory access signals and memory access timing signals to each memory module in a notebook

28  computer.

26.    The market in which WISTRON sold its IDENTIFIED NOTEBOOKS, WISTRON's position in that market, manufacturers and sellers with whom WISTRON competes in that market, and the features, performance, attributes and characteristics of the notebook computers sold by those competing companies in that market relating to hardware and software components utilized in charging the battery in a notebook computer.

27.    Alternative designs and components existing as of the date WISTRON first sold an IDENTIFIED NOTEBOOK and at or around August 2006 that WISTRON could or would have used in each of the IDENTIFIED NOTEBOOKS in place of the designs and components actually used by WISTRON relating to the use of special purpose keys or key combinations in a notebook computer.

28.    Alternative designs and components existing as of the date WISTRON first sold an IDENTIFIED NOTEBOOK and at or around August 2006 that WISTRON could or would have used in each of the IDENTIFIED NOTEBOOKS in place of the designs and components actually used by WISTRON relating to hardware and software components utilized in determining the memory speed of each memory module and in generating memory access signals and memory access timing signals to each memory module in a notebook computer.

29.    Alternative designs and components existing as of the date WISTRON first sold an IDENTIFIED NOTEBOOK and at or around August 2006 that WISTRON could or would have used in each of the IDENTIFIED NOTEBOOKS in place of the designs and components actually used by WISTRON relating to hardware and software components utilized in charging the battery in a notebook computer.

30.    The features, performance, attributes and characteristics that WISTRON's IDENTIFIED NOTEBOOKS would have had if WISTRON had employed alternative designs or components for the use of special purpose keys or key combinations in a notebook computer.

31.    The features, performance, attributes and characteristics that WISTRON's IDENTIFIED NOTEBOOKS would have had if WISTRON had employed alternative designs or hardware or software components utilized in determining the memory speed of each memory module and in generating memory access signals and memory access timing signals to each

1    memory module in a notebook computer.

2        32.    The features, performance, attributes and characteristics that WISTRON's

3    IDENTIFIED NOTEBOOKS would have had if WISTRON had employed alternative designs or

4    hardware or software components utilized in charging the battery in a notebook computer.

5        33.    Any communications between WISTRON and its UNITED STATES

6    CUSTOMERs regarding potential use in WISTRON's IDENTIFIED NOTEBOOKS of

7    alternative designs and components existing as of the date WISTRON first sold an IDENTIFIED

8    NOTEBOOKS and at or around August 2006 relating to the use of special purpose keys or key

9    combinations in a notebook computer, and the features and performance such IDENTIFIED

10   NOTEBOOKS would have using those alternative designs and components.

11       34.    Any communications between WISTRON and its UNITED STATES

12   CUSTOMERs regarding potential use in WISTRON's IDENTIFIED NOTEBOOKS of

13   alternative designs and components existing as of the date WISTRON first sold an IDENTIFIED

14   NOTEBOOK and at or around August 2006 relating to hardware and software components

15   utilized in determining the memory speed of each memory module and in generating memory

16   access signals and memory access timing signals to each memory module in a notebook

17   computer, and the features and performance such IDENTIFIED NOTEBOOKS would have using

18   those alternative designs and components.

19       35.    Any communications between WISTRON and its UNITED STATES

20   CUSTOMERs regarding potential use in WISTRON's IDENTIFIED NOTEBOOKS of

21   alternative designs and components existing as of the date WISTRON first sold an IDENTIFIED

22   NOTEBOOK and at or around August 2006 relating to hardware and software components

23   utilized in charging the battery in a notebook computer, and the features and performance such

24   IDENTIFIED NOTEBOOKS would have using those alternative designs and components.

25       36.    WISTRON's policies, procedures or practices with respect to licensing of patents

26   or know how including inventions (whether granting licenses under WISTRON's patents and

27   know how to others or receiving licenses to patents and know how of others), and payments or

28   royalties for such licenses.

1        37.    Licenses entered into by WISTRON for patents or know how including inventions

2    related to computers, notebook computers, IDENTIFIED NOTEBOOKS, or components of them,

3    including the terms, the rights licensed, the circumstances of the negotiation and the grant of such

4    licenses.

5        38.    Licenses that have been offered to or by WISTRON for patents or know how

6    including inventions related to computers, notebook computers, IDENTIFIED NOTEBOOKS, or

7    components of them, that were not entered into by WISTRON, including the terms, the rights

8    offered, the circumstances of the offers, and the negotiations pertaining to such proposed licenses.

9        39.    WISTRON's knowledge and information about the terms, royalty rates and royalty

10   bases for licenses relating to computers, notebook computers, IDENTIFIED NOTEBOOKS or

11   components of them.

12       40.    The date and circumstances under which WISTRON first learned of the

13   PATENTS-IN-SUIT.

14       41.    The communications between SAMSUNG and WISTRON with respect to the

15   PATENTS-IN-SUIT and potential licensing of the PATENTS-IN-SUIT.

16       42.    The actions and steps taken by WISTRON or WISTRON counsel after WISTRON

17   first learned of the PATENTS-IN-SUIT to determine whether or not WISTRON infringed,

18   whether those patents were valid or invalid, whether those patents were enforceable or

19   unenforceable, and whether there were any other defenses that would preclude a successful claim

20   by SAMSUNG for infringement of any of those patents.

21       43.    WISTRON's communications with any of its UNITED STATES CUSTOMERs

22   regarding the PATENTS-IN-SUIT, SAMSUNG's offer to license such patents to WISTRON,

23   SAMSUNG's communications with WISTRON regarding those patents and WISTRON's

24   activities, and WISTRON's action for declaratory relief and SAMSUNG's counterclaims against

25   WISTRON for infringement of the PATENTS-IN-SUIT in that action.

26       44.    Any agreements (whether formal or informal, oral or written) between WISTRON

27   and any of its UNITED STATES CUSTOMERs regarding the PATENTS-IN-SUIT,

28   WISTRON's action for declaratory relief and SAMSUNG's counterclaims against WISTRON for

1    infringement of the PATENTS-IN-SUIT in that action, the defense of this action, the settlement

2    of this action, or any potential license by SAMSUNG to WISTRON or its UNITED STATES

3    CUSTOMERs under the PATENTS-IN-SUIT, including any agreement by any customer to share

4    the costs of WISTRON's defense against SAMSUNG's counterclaims or to indemnify or pay to

5    WISTRON all or any part of any damages that might be awarded to SAMSUNG in any such

6    action, and any communications between WISTRON and any of its UNITED STATES

7    CUSTOMERs regarding such agreements.

8        45.    The WISTRON employees who are responsible for the decisions about what

9    IDENTIFIED NOTEBOOKS WISTRON will make, offer to sell or sell, the consideration by the

10   those employees of any advice or opinions of WISTRON counsel with respect to whether

11   WISTRON infringes any valid and enforceable claims of the PATENTS-IN-SUIT, and the

12   decisions by those employees or others to continue to sell each of the IDENTIFIED

13   NOTEBOOKS after such consideration.

14       46.    WISTRON's reliance on any opinion of counsel it obtained concerning the

15   PATENTS-IN-SUIT, including the identities of any persons involved in providing advice of

16   counsel; the identities of any persons involved in providing information or material for review by

17   any such counsel; the identities of any persons involved in the decision to rely on advice of

18   counsel; the identity of all materials or documents that were reviewed by counsel or prepared for

19   such counsel's review; the substance of any written or oral communications with counsel

20   providing the advice relied on as a defense in this action; and the identity and nature of any

21   documents related to any such advice given to WISTRON.

22       47.    Any documents or other information provided to the author of any opinion of

23   counsel concerning the PATENTS-IN-SUIT.

24       48.    The identification of any WISTRON employees or officers who communicated

25   with the author of any opinion of counsel concerning the PATENTS-IN-SUIT, as well as the

26   subject matter of said communications.

27       49.    Communications between WISTRON and the author of any opinion of counsel it

28   obtained concerning the PATENTS-IN-SUIT.

1    50.    Agreements (whether formal or informal, oral or written) and communications

2    between WISTRON and any other company that SAMSUNG has charged with infringement of

3    the PATENTS-IN-SUIT or against which SAMSUNG has commenced any action for

4    infringement of the PATENTS-IN-SUIT regarding the PATENTS-IN-SUIT, the offer or

5    acceptance of any license under the PATENTS-IN-SUIT, or the defense or settlement of any

6    action for infringement of the PATENTS-IN-SUIT, including the terms of any such agreements

7    and WISTRON's activities in connection with such agreements.

8    51.    WISTRON's patent portfolio regarding patents that relate to NOTEBOOK

9    PRODUCTS, including but not limited any licenses granted by WISTRON to any third party with

10   respect to WISTRON's patents, the entity to whom the patent or patents that relate to

11   IDENTIFIED NOTEBOOKS has been licensed and the terms of any such license.

12   52.    The data contained in the WISTRON sales summaries included in the bates range

13   WIS 0014610-0015191 and WIS 0046164-0110648, including but not limited to (a) the means by

14   which the data was prepared; (b) the contents of the database(s) from which that information was

15   collected; (c) from what business group the information originated; (d) any information omitted

16   from the sales summaries; (e) the form in which the data or databases from which the information

17   for the sales summaries was collected is/are maintained; (f) how WISTRON uses the information

18   contained in the sales summaries in the normal course of business; (g) the steps, if any,

19   WISTRON took to verify the accuracy and/or completeness of the information contained in the

20   sales summaries.

21   53.    The corporate structure of WISTRON, including but not limited to WISTRON's

22   relationship with Wistron InfoComm (Texas) Corp.

23

24

25

26

27

28

1  MARK D. FOWLER (Bar No. 124235)
   mark.fowler@dlapiper.com
2  M. ELIZABETH DAY (Bar No. 177125)
   elizabeth.day@dlapiper.com
3  TIMOTHY LOHSE (Bar No. 177230)
   timothy.lohse@dlapiper.com
4  SAL LIM (Bar No. 211836)
   sal.lim@dlapiper.com
5  GREGORY J. LUNDELL (Bar No. 234941)
   greg.lundell@dlapiper.com
6  BRIAN P. WIKNER (Bar No. 244292)
   brian.wikner@dlapiper.com
7  **DLA PIPER US LLP**
   2000 University Avenue
8  East Palo Alto, CA  94303-2248
   Telephone: (650) 833-2000
9  Facsimile:  (650) 833-2001

10 Attorneys for Plaintiff
   SAMSUNG ELECTRONICS, CO. LTD.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15 WISTRON CORPORATION, a Taiwan          CASE NO.  C-07-04748 VRW
   corporation
16                                          **DEFENDANT AND COUNTER-
                                            PLAINTIFF SAMSUNG ELECTRONICS
17          Plaintiff and Counter-          CO., LTD.'S NOTICE OF DEPOSITION
            Defendant,                      OF WISTRON CORP. REGARDING
18                                          TECHNICAL TOPICS**
       v.
19
   SAMSUNG ELECTRONICS CO., LTD., a
20 Republic of Korea corporation

21          Defendant and
            Counterclaim-Plaintiff.
22

23 SAMSUNG ELECTRONICS CO., LTD.,

24          Counterclaim-Plaintiff,

25     v.

26 WISTRON CORPORATION, and
   WISTRON INFOCOMM (TEXAS)
27 CORPORATION,

28          Counterclaim-Defendants.

DLA PIPER US LLP

EM\7227660.2                    SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF DEPOSITION OF WISTRON
                                REGARDING TECHNICAL TOPICS; CASE NO. C 07-04748 VRW

1        PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

2  Procedure, Defendant and Counter-Plaintiff Samsung Electronics Co., Ltd. ("Samsung"), by and

3  through its attorneys, will take the deposition of Plaintiff and Counter-Defendant Wistron

4  Corporation ("Wistron") upon oral examination before a certified shorthand reporter duly

5  authorized to administer oaths at the East Palo Alto offices of DLA Piper US LLP, 2000

6  University Avenue, East Palo Alto, CA 94303.  The deposition will commence on **May 5, 2008** at

7  **9:00 a.m.,** and shall continue from day to day until completed.

8        PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(3) of the Federal

9  Rules of Civil Procedure, the deposition will also be recorded using audio-visual equipment.

10        PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal

11  Rules of Civil Procedure, Wistron shall designate one or more officers, directors, managing

12  agents, or employees to testify on behalf of Wistron as to each of the subjects listed in

13  Attachment A hereto.

Dated:  April 7, 2008          DLA PIPER US LLP

By_____
Mark D. Fowler
M. Elizabeth Day
Timothy Lohse
Sal Lim
Gregory Lundell
Brian P. Wikner
Attorneys for Plaintiff
SAMSUNG ELECTRONICS CO., LTD.

DLA PIPER US LLP

EM\7227660.2

**ATTACHMENT A**

**DEFINITIONS**

1.      The term "WISTRON" means Plaintiff and Counter-Defendant Wistron Corporation, and each of its respective predecessors, successors, divisions, subsidiaries and affiliates thereof, and anyone acting on its behalf, including its respective directors, officers, employees, attorneys and agents.

2.      The term "SAMSUNG" means Samsung Electronics Co., Ltd.

3.      The phrase "NOTEBOOK PRODUCT" means any partially or completely assembled notebook computer or a main board or "motherboard" for a notebook computer made, used, sold, offered for sale or imported into the United States by WISTRON.

4.      The phrase "IDENTIFIED NOTEBOOKS" means those NOTEBOOK PRODUCTS listed in WISTRON's April 3, 2008 Supplemental Response to Samsung Interrogatory Nos. 1 and 2, and/or any NOTEBOOK PRODUCT identified in WISTRON's Sales and Configuration Summaries.

5.      The term "SMI" means system management interrupt.

6.      The term "SCI" means system control interrupt.

7.      The phrase "HOT KEY" means a combination of the "Fn" key and any alphanumeric key, other key, e.g., cursor control key, or any function key, that when activated causes a completely assembled NOTEBOOK PRODUCT to perform a predetermined function.

8.      The phrase "HOT KEY FUNCTION" means a predetermined function that is performed by a completely assembled NOTEBOOK PRODUCT when an associated HOT KEY is activated.

9.      The phrase "MEMORY MODULE" means any SO-DIMM Memory Module included in any and all IDENTIFIED NOTEBOOKS from August 7, 2006 to the present.

10.     The term "NORTHBRIDGE" means any northbridge chip included in a NOTEBOOK PRODUCT sold or otherwise supplied by WISTRON from August 7, 2006 to the present, including but not limited to all versions of: the GMCH LE82GM965; the GMCH Q682945GM; and the Q682943GML; and GMCH LE88CLGM SLAST.

1       11.    The term "SOUTHBRIDGE" means any southbridge chip included in a

2 NOTEBOOK PRODUCT sold or otherwise supplied by WISTRON from August 7, 2006 to the

3 present, including but not limited to all versions of: the ICH NH82801GBM F7083012 part and

4 the ICH NH82801 HBM part.

5       12.    The term "PROCESSOR" or "CPU" means any Intel Corporation or AMD, Inc.

6 processor with an embedded memory controller included in a NOTEBOOK PRODUCT sold or

7 otherwise supplied by WISTRON from August 7, 2006 to the present, including but not limited to

8 all versions of: the Turion 64x2 Mobile Technology Dual-Core Processor; the LF80538 430;

9 LF80537 T7300; LF80537 T5500; LF80537 T5250; and the F80539 T2350.

10       13.    The phrase "BATTERY CHARGER(S)" means any battery charger and associated

11 circuitry included in any and all IDENTIFIED NOTEBOOKS from August 7, 2006 to the

12 present.

13       14.    The term "BIOS"  means basic input/output system.

14       15.    The term "FIRMWARE"  means software for controlling the operations of a

15 keyboard controller, an embedded controller, a MEMORY MODULE and/or BATTERY

16 CHARGER in any and all IDENTIFIED NOTEBOOKS.

17       16.    The term "SOURCE CODE" means human-readable code that is written in

18 assembly language or a high-level language, such as C or C++.

19       17.    In case of doubt as to the scope of a clause including "and," "or," "any," "all,"

20 "each," or "every" the intended meaning is inclusive rather than exclusive.

21       18.    The terms "RELATE," "RELATED TO" or "RELATING TO" means referring to,

22 alluding to, concerning, connected with, commenting on, in respect of, about, regarding,

23 discussing, showing, evidencing, constituting, or supporting.

24       19.    The term "MEMORY CONTROLLER" means a memory controller chip such as

25 the NORTHBRIDGE or embedded memory controller circuitry in the CPU.

26       20.    The term "SPD ROM" means a serial presence detect read only memory.

27       21.    The term "MEMORY CONTROL SIGNALS" means signals generated by the

28 MEMORY CONTROLLER that control the read/write operation of a MEMORY MODULE.

-2-

## TOPICS

**As Related To U.S. Patent No. 5,333,273**

1.     For the period from August 7, 2006 to the present, the design, structure, and operation of all hardware and software components in each of the IDENTIFIED NOTEBOOKS that (1) monitor the actuation of one or more keys on the keyboard, (2) generate interrupt signals in response to the actuation of one or more keys on the keyboard, and (3) execute interrupt handling routines in response to the interrupt signals, said components including, but not limited to, interrupt signal lines, circuits, keyboard controllers, NORTHBRIDGE and SOUTHBRIDGE chips, microprocessors, read only memory, operating system, keyboard controller FIRMWARE and system BIOS.

2.     For the period from August 7, 2006 to the present, the design, structure, and operation of all hardware and software components in each of the IDENTIFIED NOTEBOOKS that (1) monitor the actuation of any HOT KEYS, (2) generate SMI or SCI signals in response to the actuation of any HOT KEYS, and (3) execute SMI or SCI handling routines in response to the SMI or SCI signals, said components including, but not limited to, interrupt signal lines, circuits, keyboard controllers, NORTHBRIDGE and SOUTHBRIDGE chips, microprocessors, read only memory, operating system, keyboard controller FIRMWARE and system BIOS.

3.     For the period from August 7, 2006 to the present, all implementations and operation of HOT KEY FUNCTIONS in each of the IDENTIFIED NOTEBOOKS.

4.     For the period from August 7, 2006 to the present, the SOURCE CODE of the keyboard controller FIRMWARE and system BIOS that are used to (1) monitor the actuation of one or more keys on the keyboard, (2) generate interrupt signals in response to the actuation of one or more keys on the keyboard, (3) execute interrupt handling routines in response to the interrupt signals, (4) monitor the actuation of any HOT KEYS, (5) generate SMI or SCI signals in response to the actuation of any HOT KEYS, or (6) execute SMI or SCI handling routines in response to the SMI or SCI signals in each of the IDENTIFIED NOTEBOOKS.

**As Related To U.S. Patent No. 5,625,275**

5.     For the period from August 7, 2006 to the present, all implementations and/or

1    operations of RELATING TO the charging of the battery in each of the IDENTIFIED

2    NOTEBOOKS.

3          6.      For the period from August 7, 2006 to the present, the design, structure, and

4    operation of all hardware and software components that are utilized to: (1) monitor the input

5    current level, the charging current level, and/or the output voltage level; (2) generate control

6    signals in response to said levels; and (3) use said control signals to regulate the charging current

7    provided to the battery in each of the IDENTIFIED NOTEBOOKS, said components including,

8    but not limited to, BATTERY CHARGERS, resistors, transistor, capacitors, sensors, AC

9    adapters, BIOS, FIRMWARE, signal lines, microprocessors, power supplies, circuits, controllers,

10   and operating systems.

11         7.      For the period from August 7, 2006 to the present, the SOURCE CODE of the

12   BATTERY CHARGER FIRMWARE and system BIOS in each of the IDENTIFIED

13   NOTEBOOKS.

14         8.      For the period from August 7, 2006 to the present, any and all BATTERY

15   CHARGERS' ability to set and/or control the following in each of the IDENTIFIED

16   NOTEBOOKS: (1) the input current level; (2) the charging current level; and/or (3) the output

17   voltage level.

18         9.      For the period from August 7, 2006 to the present, the ability of any and all

19   BATTERY CHARGERS to compare the input current, the charging current, and/or the output

20   voltage with its respective maximum limit and with one another in each of the IDENTIFIED

21   NOTEBOOKS.

22   **As Related To U.S. Patent No. 6,523,100**

23         10.     For the period from August 7, 2006 to the present, the design, structure, and

24   operation of all hardware and software components in the MEMORY MODULES in each of the

25   IDENTIFIED NOTEBOOKS for: (1) reading out the serial presence detect data in SPD ROM;

26   and (2) receiving MEMORY CONTROL SIGNALS from a MEMORY CONTROLLER, said

27   components including SCL and SDA signal lines, NORTHBRIDGE and SOUTHBRIDGE chips,

28   SPD ROMs, signal lines connecting the MEMORY MODULE to the NORTHBRIDGE chip or

1 embedded memory controller, FIRMWARE and system BIOS.

2       11.    For the period from August 7, 2006 to the present, the serial presence detect data

3 stored in the SPD ROM for each MEMORY MODULE in each IDENTIFIED NOTEBOOK.

4       12.    For the period from August 7, 2006 to the present, the design, structure, and

5 operation of all hardware and software components in each of the IDENTIFIED NOTEBOOKS

6 for: a) sending a signal over the SCL line to the SPD ROM; b) receiving data from the SPD ROM

7 over the SDA line; and c) communicating the data from the SPD ROM to the NORTHBRIDGE

8 said components including SCL and SDA signal lines, NORTHBRIDGE and SOUTHBRIDGE

9 chips, SPD ROMs, signal lines connecting the MEMORY MODULE to the NORTHBRIDGE

10 chip or embedded memory controller, FIRMWARE and system BIOS.

11       13.    For the period from August 7, 2006 to the present, the design, structure, and

12 operation of all hardware and software components in each of the IDENTIFIED NOTEBOOKS

13 for a) receiving signals from the SPD ROM; b) setting the registers in the NORTHBRIDGE in

14 response to those signals; and c) generating MEMORY CONTROL SIGNALS signals when the

15 registers are set to control the read/write operation of the MEMORY MODULE, said components

16 including NORTHBRIDGE chips, signal lines connecting the MEMORY MODULE to the

17 NORTHBRIDGE chip or embedded memory controller, FIRMWARE and system BIOS.

18 **As Related To All Asserted Patents**

19       14.    The configuration of each of the IDENTIFIED NOTEBOOKS.

20       15.    The project names and WISTRON model names for each of the IDENTIFIED

21 NOTEBOOKS, including:

22       1.    The meaning of WISTRON nomenclature;

23       2.    The relationship between project names and WISTRON model names; and

24       3.    The relationship of project names and WISTRON model names to the

25       configuration of each IDENTIFIED NOTEBOOK.

26

27

28