Pages 1 - 13

United States District Court

Northern District of California

Before The Honorable Vaughn R. Walker

| | |
|---|---|
| Wistron Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. C07-4748 VRW |
| ) | |
| Samsung Electronics ) | |
| Corporation, Limited, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

San Francisco, California
Thursday, May 29, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:        K&L Gates LLP
                      55 Second Street, Suite 1700
                      San Francisco, California  94105
                 **By: Timothy Paar Walker, Esquire**
                      **Christy Vanessa La Pierre, Esquire**
                      **Harold H. Davis, Jr., Esquire**


For Defendant:        DLA Piper US LLP
                      2000 University Avenue
                      East Palo Alto, California  94303
                 **By: Sal Lim, Esquire**
                      **Nikolas J. Bohl, Esquire**


*Reported By:*        *Sahar McVickar, RPR, CSR No. 12963*
                      *Official Reporter, U.S. District Court*
                      *For the Northern District of California*


(Computerized Transcription By Eclipse)

*Sahar McVickar, C.S.R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

```
1    Thursday, May 29, 2008                                    4:15 p.m.
2                          P R O C E E D I N G S
3                             (Telephonically:)
4              THE COURT:  Counsel?
5              MR. LIM:  Good afternoon, Your Honor.
6              THE COURT:  Good afternoon.  I'm here with a court
7    reporter, the Court clerk, Ms. Delphin, and the law clerk.  We
8    are on the record.
9              And your appearances, please.
10             MR. LIM:  Good afternoon, Your Honor.
11             This is Sal Lim from DLA Piper.  With me is also
12   Nick Bohl from DLA Piper, and we're appearing on behalf of
13   Samsung Electronics.
14             THE COURT:  Very well, good afternoon.
15             MR. WALKER:  This is Tim walker with Gates
16   representing Wistron.  And with me is Christy La Pierre and
17   Harold Davis.
18             THE COURT:  Very well.
19             I've read the two letters that have been submitted:
20   a May 28th letter, from Mr. Lim, concerning the discovery
21   dispute that I understand you would like to talk about this
22   afternoon, and Ms. La Pierrre's response, which is dated
23   May 29.
24             In addition, I have a copy of a document that
25   apparently was produced in the course of discovery.  It bears a
```

```
 1  Bates stamp number WIS-E01021313.
 2          I've read these, Counsel.  Let me start, Mr. Walker,
 3  with you.
 4          MR. WALKER:  Sure.
 5          THE COURT:  The document that was produced contains
 6  an e-mail from a Mr. Jim Soul (phonetic) to Herman Chen dated
 7  January 16, 2007, and essentially states, "Attached file is
 8  function hot key table for every customer."  Please describe to
 9  me what a "function hot key table for every customer" is.
10          MR. WALKER:  It is a -- it is a summary, prepared at
11  the request of Wistron's in-house lawyer, to -- to summarize
12  how certain computers respond when you hit a combination of
13  keys.
14          And so, there are some tables, and these tables
15  include some entries that have to do with, you know, identify
16  some computers and some key combinations.  And, what the
17  computer does when you press those key combinations -- and it
18  was prepared, as -- as our letter explains, at the request of
19  in-house counsel, prepared by the engineers who were on that
20  e-mail, was subsequently forwarded in an e-mail that was -- was
21  not produced because the -- because the lawyers' name appeared
22  on that -- on the subsequent e-mail, was sent to -- to the
23  lawyer so the lawyer could evaluate Samsung's claims.
24          THE COURT:  How does the functionality that you have
25  described relate to this litigation?
```

1    **MR. WALKER:**  You know, it's a -- I guess one of the
2  issues here, with this document, I would say --
3         **THE COURT:**  No, I'm asking about the functionality
4  that you've described.  How does that -- how does that
5  functionality relate to the issues in this litigation?
6         **MR. WALKER:**  I guess, to the extent that Samsung is
7  taking the position, that it's -- that its patent claims relate
8  to how -- how a computer responds and what a computer does when
9  certain key combinations are pressed, I think Samsung's
10 position is that -- that the -- this table -- you know, may be
11 better for Samsung to describe how they think this might
12 relate, but, to the extent, their claims involve what the
13 computer does, in response to pressing a combinations of keys,
14 this table summarizes the behavior of -- of -- of computers
15 that, you know, might be relevant to the case.
16        **THE COURT:**  Might be relative to the case?
17        **MR. WALKER:**  Might be relevant to the case.  I say
18 that -- I have to qualify all of this because I don't think our
19 office has actually done any -- any separate evaluation of
20 these tech documents, of this particular summary or come to any
21 conclusion as to whether or not this summary is accurate or --
22 or -- or contains information about only -- only relevant
23 computers.
24        Again, this was something that was done at the
25 request of in-house counsel and some engineers who didn't

1  necessarily understand the nuances of the legal claims being
2  made, and the claim constructions, certainly, that were
3  subsequently made by Your Honor and another court.
4          You know, knowing nothing about this stuff, these
5  engineers prepared a document that was then sent to the lawyer
6  for evaluation.  And what we have now, is, you know, counsel
7  for Samsung has learned about the existence of this, during
8  these depositions, and want this produced, even though it's
9  prepared for counsel and even though they have -- they have
10 underlying documents that they can summarize themselves and get
11 exactly the same information from those documents, to the
12 extent -- you know, make a summary, I guess, of relevant
13 information that may or may not look like this summary.
14         But, they have the underlying documents.  You know,
15 we have produced documents that should allow Samsung to do
16 their own summary, if that's what they want to do.
17         **MR. LIM:**  Your Honor, may I answer the Court's
18 question?
19         **THE COURT:**  You may.  Let me think a little bit more
20 about Mr. Walker's response.
21         **MR. LIM:**  Okay.
22         **THE COURT:**  I do want to hear from you, Mr. Lim.
23         Now, you say that this document was -- Mr. Walker,
24 this document was not prepared by litigation counsel by your
25 firm, but was prepared at the direction of in-house counsel.

1        **MR. WALKER:**  In anticipation of litigation, this
2   was, after being contacted by Samsung about these patents that
3   are at issue in this case and -- and, anticipating that they
4   might be sued by Samsung, and, in investigating Samsung's
5   claims, they asked the engineers to --
6        **THE COURT:**  It was prepared, I gather, before this
7   litigation was commenced.
8        **MR. WALKER:**  That's correct, it was.  But it was
9   prepared after -- it was prepared some months after Samsung
10  contacted Wistron about these patents and claiming that -- that
11  there were some issues of infringement with these patents based
12  on that, you know, based on what's been addressed in this
13  document.
14       **THE COURT:**  I see.  All right.
15       Mr. Lim, would you care to respond to the Court's
16  question?
17       **MR. LIM:**  Yes, I would, Your Honor.  And I believe
18  the Court's question was how does the functionality described
19  in this table in question relate to the issues of this case?
20  And, Samsung's response is: this functionality directly relates
21  to Samsung's infringement claim of the '273 patent which is at
22  issue in this case.
23       As Your Honor may recall, during the trial of Compal
24  Electronics the '273 patent deals with a hockey functionality
25  which triggers special functions utilizing the FN key in

1  combination with another key.  And, the combination of those
2  two keys, or certain two keys on the keyboard, would trigger
3  what is referred to as an "SCI event," as shown in this e-mail.
4          And Wistron knows this, because Samsung has served
5  its preliminary infringement contentions.  And also, Samsung
6  has recently served Samsung's supplemental infringement
7  contentions with respect to the '273 patent.  And also, Wistron
8  further knows that this relates to Samsung's infringement
9  claim, because these engineers were specifically asked to
10 prepare this table as the result of Samsung's identifying the
11 '273 patent as one of the patents that potentially could be
12 infringed by Wistron.  So certainly, Wistron is aware of the
13 relevance of this table that necessity created.  And it's
14 certainly, without a doubt, relevant to the issue in this case.
15         **THE COURT:**  Well, how does that cut with respect to
16 Mr. Walker's claim that the -- the document was prepared in
17 anticipation of litigation?
18         **MR. LIM:**  Well, our response to this is that the
19 table contains nothing more than facts.  And, the Work Product
20 Doctrine does not extend to the protection of facts.  And, as I
21 believe Wistron made clear, the information contained in this
22 document is found in Wistron's bios code and also Wistron's
23 product specification.
24         And, we intend to question Mr. Soul, the author of
25 this table, as well as the person who Wistron designated as its

1  corporate representative in response to Samsung's 30(b)(6)
2  deposition on the topics of how Wistron's products perform the
3  functionality as described in this table.
4           So, having this table would efficiently allow
5  Mr. Soul to respond to our questions.  Without the benefit of
6  this table, Mr. Soul would need to either review the bios code,
7  which is enormous, and also the documents, the product
8  specification, in order to be able to answer Samsung's
9  questions.  And that's why Samsung's requesting the production
10 of this table, at Mr. Soul's deposition, so as to allow
11 Mr. Soul to efficiently answer Samsung's questions.
12          **THE COURT:**  All right.
13          Anything else, Mr. Lim, that you want to put on the
14 record before I go back to Mr. Walker, very briefly, to see if
15 he has any response?
16          **MR. LIM:**  No, I do not, Your Honor, at this time.
17          **THE COURT:**  Very well.
18          Any response to that, Mr. Walker?
19          **MR. WALKER:**  Well, I think, first of all, the very
20 fact that they are about to question a witness about this just
21 goes to the point, again, that, you know, there is nothing
22 here, in this document, that, first of all, can't be extracted
23 from Wistron's document production to be summarized as Samsung
24 sees fit as to efficiently questioning the witness.  These are
25 30(b)(6) deposition, I believe.

1         I'm sure the Court appreciates that the standard for
2    the witness to be prepared and answer questions, has to do with
3    the reasonableness of the scope of the topics and that sort of
4    thing.  We are not necessarily required to have our witnesses
5    read off of privileged summaries to respond to deposition
6    questions.  And, I would just like to point out that -- or
7    remind the Court -- the Court is probably aware of the -- well,
8    aware of the standard here, for -- for work product, but just
9    Rule -- Rule 26(b)(3)(a), as amended recently, a party may not
10   discover documents and tangible things that are prepared in
11   anticipation of litigation, or for trial, by, or for, another
12   party, or its representative.  And that would include these
13   engineers.
14         And, the very case, one of the very cases, cited by
15   Samsung, the Grand Jury subpoena case, it was a very selective
16   quotation they gave the court.  The beginning of that paragraph
17   says, "The Supreme Court has held that the Work Product
18   Doctrine applies to documents created by investigators working
19   for attorneys provided the documents were created in
20   anticipation of litigation."
21         I just don't see how they have made any showing, at
22   all, that this document does not qualify for work product
23   protection.  And, I don't -- I just don't see how -- why he
24   should be allowed to question a witness on it or see it when
25   they have available to them, you know, documents, responsive

```
 1   documents, from which they can create their own summary, with
 2   or without, to 30(b)(6) witness testimony.
 3              And, of course, to the extent the witness is
 4   familiar with the subject matter the witness will testify about
 5   it, anyway, without the help of the document.
 6              THE COURT:  Matter submitted?
 7              MR. LIM:  Your Honor --
 8              THE COURT:  Matter submitted, Mr. Walker?
 9              MR. WALKER:  Yes, Your Honor.
10              THE COURT:  Mr. Lim, submitted?
11              MR. LIM:  Your Honor, if I may just address one
12   quick point?
13              THE COURT:  Well, you may, but you -- you may cause
14   me to change my mind, Mr. Lim.
15              MR. LIM:  Okay, then I won't.
16              THE COURT:  First of all, it does appear that the
17   document at issue, which is an attachment to a document that
18   was produced in litigation, and I have referred earlier to the
19   document by the Bates Number, WIS-E01021313, the attachment,
20   which appears to be a table of customers' configuration of the
21   hot key functionality, here at issue, is not, in the Court's
22   view, a work product document.
23              It may or may not be a document that was prepared at
24   the instance of in-house counsel.  The document may or may not
25   have been produced -- or prepared, excuse me, may or may not
```

1  have been prepared after Wistron had notice of litigation, or
2  the possibility of litigation, from Samsung, concerning the
3  issues here.  But, the contents of the document as have been
4  described by counsel this afternoon indicate that it contains
5  factual matter, or factual information, and not attorney notes,
6  thoughts, or impressions in anticipation of litigation or
7  strategies for purposes of litigation.
8           A document which simply summarizes facts without the
9  input of attorney thoughts and impressions is not, in the
10 Court's view, a work product, and, therefore, I do not believe
11 that a work product assertion with respect to this document, is
12 well taken.
13          But, even if that is incorrect, and the document
14 should be characterized as a work product document, it appears
15 from what counsel have outlined to the Court, this afternoon,
16 that the document would facilitate the ultimate discovery
17 that's necessary for this litigation, that its production would
18 not cause undue hardship on Wistron; that as Mr. Walker has
19 pointed out, the document contents or the information that the
20 document contains, could be compiled by Samsung through other
21 means, and yet, those other means would entail a great deal of
22 additional time, effort, and expense on Samsung's part.  So,
23 the production of this document will facilitate the discovery
24 process.
25          There is another aspect to Wistron's position in

1  this regard, and that is, if it is correct, that the
2  information contained in this document is available from other
3  sources. That suggests, implies very strongly, that the content
4  of the document is not, in fact, work product.  But, that
5  aside, it does seem to me that the exception to the Work
6  Product Doctrine that is contained in Rule 26 of the Federal
7  Rule of Civil Procedure would apply, even if this document were
8  properly characterized as a work product document.
9           Accordingly, it will be the directive of the Court
10 that Wistron shall forthwith produce the document for Samsung's
11 review and for use in the Rule 30(b)(6) deposition that you are
12 taking at the present time.
13          Now, if you wish to apply the protective order which
14 is in place, in this litigation, to the document, you are --
15 you certainly can do that, but, I would order that the document
16 be produced.
17          Anything further, Counsel?
18          **MR. WALKER:**  No, Your Honor.  Thank you very much.
19          **MR. LIM:**  Thank you.
20          **THE COURT:**  Okay.  Thank you.
21                **(Proceedings adjourned at 4:28 p.m.)**
22
23                         ---o0o---
24
25

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

**Sahar McVickar**, **RPR, CSR No. 12963**

**June 20, 2008**