Pages 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VAUGHN R. WALKER

WISTRON CORPORATION,              )
                                  )
            Plaintiff,            )
                                  )
  VS.                             ) NO. C 07-4748 VRW
                                  )
SAMSUNG ELECTRONICS CO., LTD.,    )
                                  ) San Francisco, California
            Defendant.            ) Wednesday
                                  ) June 13, 2008
_____ ) 3:00 p.m.


**TRANSCRIPT OF TELECONFERENCE**

**APPEARANCES**:

**For Plaintiff:**          K&L GATES
                            55 Second Street
                            Suite 1700
                            San Francisco, California 94105-3493
                    BY:  **CHRISTY LAPIERRE**
                         **HAROLD DAVIS, ESQ.**



**For Defendant:**          DLA Piper US, LLP
                            2000 University Avenue
                            East Palo Alto, California 94303-9709
                    BY:  **SAL LIM, ESQ.**
                         **ERIK FUEHRER, ESQ.**


        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

1   **APPEARANCES:   (CONTINUED)**

2

3   **For Quanta:**                    Paul, Hastings, Janofsky & Walker LLP
                                        515 South Flower Street
                                        25th Floor
4                                       Los Angeles, California 90071
                               **BY:   PETER WIED, ESQ.**
5

6

7                                         –    –    –    –

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2  JUNE 13, 2008                                      3:01 p.m.

3

4          (All parties appearing telephonically.)

5          **THE COURT:**  Good afternoon, counsel.

6          **MR.LIM:**  Good afternoon your Honor.

7          **MS. LA PIERRE:**  Good afternoon, your Honor.

8          **MR. WIED:**  Good afternoon, your Honor.

9          **THE COURT:**  I am here with a court reporter and a law

10  clerk.  Let's have appearances, please.  First of all, for

11  Wistron.

12          **MS. LA PIERRE:**  Christy LaPierre and Hal Davis for

13  Wistron.

14          **THE COURT:**  Very well.  And for Samsung?

15          **MR.LIM:**  Good afternoon, your Honor.  This is Sal Lim

16  with DLA Piper.  With me is my colleague Erik Fuehrer also with

17  DLA Piper.  We are appearing on behalf of Samsung.

18          **THE COURT:**  Very well.  Well, I have received this

19  recent --

20          **MR. WIED:**  Peter Wied from Paul Hastings on behalf of

21  Quanta.

22          **THE COURT:**  I have received this most recent

23  correspondence, and let me identify specifically what I am

24  referring to.  It is DLA Piper's June 12 letter for Samsung

25  signed by Mr. Lim; a June 12 letter with attachments from

1  Ms. LaPierre dated June 12.  I believe that letter -- has it

2  been docketed as docket number 62.  I don't believe that the --

3  the clerk tells me the DLA Piper June 12 letter has been

4  docketed as 61.

5          And docketed as 63 is another June 12 letter from K&L

6  Gates signed by Mr. Davis, to which there are some attachments.

7          Now, first, inasmuch as interrogatory number 13 is a

8  subject in dispute, I want to ask whether the full text of

9  Samsung's response to interrogatory number 13 has been included

10 in any of this material?  I have been unable find it.

11          There are attachments of various -- for example,

12 attached to document number 62 are Samsung's responses to

13 document requests and a copy of a subpoena.  Apparently, this

14 is the subpoena that was served on Quanta, but I don't believe

15 I have the full text of Samsung's response to interrogatory

16 number 13.  Am I in error?

17          **MS. LA PIERRE:**  No, you are not in error.

18          **THE COURT:**  Well, it's --

19          **MS. LA PIERRE:**  I actually thought I put it into one

20 of the letters, but it looks like I did not.

21          **THE COURT:**  Well, it's rather hard for me to deal

22 with the adequacy or inadequacy of Samsung's response to

23 interrogatory number 13 unless I have it.

24          **MS. LA PIERRE:**  The unfortunate thing is, your Honor,

25 is that it is merely blanket objections and then --

1              THE COURT:  Well, counsel, I want to see it.

2              MS. LA PIERRE:  Okay.

3              THE COURT:  And it's really -- that's what is

4    essential.

5              Now, you have described on page two of docket number

6    62 the response that Samsung gave, but, obviously, I would like

7    to see it in full text.

8              I will say this:  The first problem that I perceive

9    about interrogatory number 13 is, quite obviously, it's a

10   compound question.  It's got various parts and they are not

11   broken out in subparts so that a response can be very

12   meaningful.  Undoubtedly, we could work around that, but it's a

13   little hard to do that in the absence of actually having the

14   interrogatory response before me.

15             There is a lot in what you have submitted in these

16   three documents in the last day or so about conduct at the

17   depositions that were taken in Taiwan.  And included in the

18   materials that K&L Gates has submitted are copies of the

19   transcripts of some of those depositions.  I have not read

20   those transcripts and, frankly, I'm not inclined to do so.  I

21   don't believe that that's either necessary or appropriate, but

22   it's pretty clear from these letters that discovery in this

23   case has broken down and broken down seriously.

24             So I'm considering a couple of alternatives.  And you

25   might want to confer with your seniors and decide how you wish

1  to proceed.

2          First, it seems to me given the breakdown in the

3  discovery process here I should order, and I will order, that

4  all further deposition discovery cease in this case until we

5  can get discovery back on some kind of a reasonable track.  And

6  that reasonable track, I'm considering two possibilities.

7          First, is that all further depositions in the case

8  shall be taken only by and defended only by Mark Fowler for

9  Samsung without the assistance or participation of any other

10  lawyers or paralegals.  And for Wistron all further depositions

11  shall be taken or defended personally, without the assistance

12  of any other lawyers or paralegals, by Michael J. Bettinger.

13  That's one possibility.

14          The other possibility is the possibility of a JAMS

15  judge, very possibly Judge Charles Legge, former judge of this

16  court or former judge of this court Fern Smith as a discovery

17  master with the expenses of the discovery master to be borne by

18  the parties.  And then at the conclusion of the discovery

19  process, the master would make a recommendation as to who of

20  the parties was most responsible for the breakdown in discovery

21  and the full amount of the master's expenses would be assessed

22  against that party.

23          And the discovery master will accompany the lawyers

24  at every deposition, sit in at every deposition, rule on

25  whatever objections there are or privilege claims or any other

1    matters that arose in the course of the deposition, make a

2    determination of what the appropriate course of action should

3    be to resolve whatever dispute arises.  And if the depositions

4    are taken in Taipei or anywhere else, then all of the expenses

5    of the master to accompany the -- and personally to attend the

6    depositions will be borne by the parties.

7            What you might do, counsel, is to take these

8    suggestions back to your seniors, to Mr. Fowler and to

9    Mr. Bettinger, and then get back to me on Monday as to which of

10   these two alternatives you wish to adopt.

11           If you think in light of the fact that these are the

12   alternatives that your clients face, that you can work through

13   these discovery issues in a more professional fashion, I will

14   be willing to give you that leave, but if we have another

15   breakdown of discovery of the kind that obviously we have had

16   here, then I will resort to one or the other of these two

17   alternatives.

18           Now, I will expect an answer from you by 12:00 noon

19   Pacific time on Monday the 16th with respect to these

20   alternatives on depositions.

21           Now, let's talk, if we can, about the Quanta issue

22   since we have Mr. Weid on the line and that issue appears to be

23   somewhat separate from the others.

24           Mr. Weid, tell me what your position is with respect

25   to the subpoena that's been issued to your client?

```
 1            MR. WIED:  Well, your Honor, with respect to the

 2   subpoena -- and I don't know if your Honor has had a chance to

 3   see, we filed just a few hours ago, and I don't know if it's

 4   been delivered to your Honor yet, a letter just clarifying with

 5   regard to the subpoena and --

 6            THE COURT:  No, I haven't seen that, but the clerk

 7   has gone to get it and I will have it in just a few moments, if

 8   it was --

 9            MR. WIED:  If I may proceed, I will just --

10            THE COURT:  When was the --

11            MR. WIED:  I believe --

12            THE COURT:  Mr. Weid, Mr. Weid, Mr. Weid, when was

13   the document filed?

14            MR. WIED:  I believe it was filed earlier today, I

15   believe about 12:30 as document number 65.

16            THE COURT:  Okay.  Well, just hold on.  I will have

17   it in a minute and I will take a look at it.

18            (Brief pause.)

19            (Whereupon, document was tendered

20             to the Court.)

21            THE COURT:  All right, I have it.  Give me a minute

22   and I will read it.

23            MR. WIED:  Thank you, your Honor.

24            (Brief pause.)

25            THE COURT:  By the way, it sounds like somebody is
```

1  celebrating Chinese New Year's from the popping that's going on

2  in the background.  What is that and where is it coming from?

3           **MS. LA PIERRE:**  It's quiet here.

4           **MR.LIM:**  Here also, your Honor.

5           **THE COURT:**  Mr. Weid, that leaves you.

6           **MR. WIED:**  I apologize, your Honor.  I don't hear any

7  popping right here.  Perhaps it's just the connection.

8           **THE COURT:**  Well, it does sound like the New Year's

9  Day parade in Chinatown.

10          All right.  Well, do I understand from this exchange

11  of emails that you have resolved the issues with respect to the

12  Quanta subpoena?

13          **MR. DAVIS:**  Your Honor, this is Hal Davis for

14  Wistron.

15          We haven't had a chance to respond to the letter

16  because it just came this afternoon, but the point is is that

17  there was a resolution of the Quanta subpoena based on

18  discussions and emails that were not included in Mr. Weid's

19  submission, and that was mainly that Quanta had demanded from

20  Wistron that Wistron pay Quanta $50,000 in a retainer fee in

21  order to obtain the documents or that they would seek sanctions

22  with the Court for us requesting documents that Samsung had

23  possession of; namely, litigation documents such as the Wetig

24  report we talked about last Wednesday.

25          In an effort to informally resolve the matter,

1   Wistron agreed to seek those documents solely from Wistron,

2   except for some documents -- I'm sorry, solely from Samsung,

3   except for certain documents that Samsung indicated that it no

4   longer had because pursuant to the settlement in that case it

5   would have had to have destroyed that's documents, and those

6   were mainly the documents that are -- that were subject to the

7   compromise mentioned in the emails, the infringement contention

8   -- or, the invalidity contention and the non-infringement

9   contentions.

10          **THE COURT:**  Those are numbers one and two in the

11  specification, correct?

12          **MR. DAVIS:**  That's correct, your Honor.

13          And so it was our understanding from that compromise

14  with Quanta that we were then allowed to go get from Samsung

15  all of the rest of the documents that Samsung still had in its

16  possession, one of those documents being this Wetig analysis.

17          Now, once we identified it and asked Samsung to

18  produce it, Quanta suddenly objected claiming that we should

19  not be able to see it, which sort of undercut the whole basis

20  for the agreement that we had with Quanta and, again,

21  contradicted what they told us in that we should be able to get

22  all such documents from Samsung in the first place.

23          So we were merely doing what Quanta asked us to do,

24  go get the documents from Samsung.  Samsung was merely trying

25  to produce the documents to us when Quanta decided that we

1 should not be able to see the documents.

2        And, your Honor, I think that we just about resolved

3 this issue between the parties.  I think the only issue

4 remaining between Quanta and Wistron is whether or not there

5 needs to be a modification to the current protective order.

6        My understanding is that Quanta has indicated that it

7 believes that it should get a special right that's not afforded

8 to any other third party or any of the parties in this

9 litigation and, indeed, was not a right asserted by Quanta in

10 its previously litigation, and that right is to get a five-day

11 notice before anyone sees these documents whatsoever.

12        We have agreed to identify in advance of showing them

13 to our expert witnesses who our expert witnesses are to ensure

14 that there is no conflicts and that they can assert any sort of

15 objections to those experts seeing them.  But beyond that,

16 should we decide to then show that expert the document later

17 on, either at a deposition or if the certain uses that

18 exhibit -- or uses that declaration as an exhibit, again, filed

19 under seal in conjunction with the terms of the protective

20 order, that we not have to undergo a burden of having to inform

21 five days in advance Quanta of that intended use.

22        **MR. WIED:**  Your Honor, if I could respond to these

23 points?

24        **THE COURT:**  All right, Mr. Weid.

25        **MR. WIED:**  With regards to -- although I disagree

1    with some of Mr. Davis' characterizations of previous events, I

2    think he is correct in that the issues have largely been

3    resolved between the parties based upon the guidance that you

4    gave us last time.

5         Quanta is willing to agree to withdraw any objection

6    to Samsung producing the technical information.

7         What we did ask the parties for, and it seems like

8    there is a little misunderstanding, what we were simply asking

9    for is because Quanta is not going to be a party to the

10   litigation and so once the documents are produced have no idea

11   what happens to them, we simply ask to be notified, for

12   example, if there is going to be a deposition, a hearing,

13   something -- some sort of event in which Quanta's confidential

14   information would be used such that it now exists; that

15   information could now be found in the documents that were being

16   produced, but, also, in some new document.  So in the case of a

17   deposition, in the deposition transcript.  So that Quanta now

18   knew that its confidential information, in addition to being in

19   the document that was originally produced, also existed in this

20   deposition transcript so that Quanta was aware of it and would

21   have a chance to make sure that it was properly designated

22   under the protective order and that it -- its information

23   remained confidential.

24         And we are certainly open to alternative ways of

25   doing that and would welcome the Court's guidance, but that was

1  the intent of the amendment to the protective order that we had

2  circulated to Wistron and Samsung.

3          **THE COURT:**  Well, we have a protective order in place

4  in the case, do we not?

5          **MR. WIED:**  There is, your Honor.

6          **THE COURT:**  Well, I think it's pretty awkward to

7  impose a five-day notice requirement or, indeed, any kind of a

8  notice requirement before a document is used in the course of

9  discovery.  It's one of those requirements that's easy to

10 overlook in the rush of preparing a case for trial and it might

11 very well frustrate taking appropriate discovery.  So I think

12 it's impractical limitation.

13          It should be sufficient, if the document is subject

14 to the usual protective order in the case, and I would think

15 that would afford Quanta sufficient protection.  It's going to

16 be treated just like any other confidential document.

17          Presumably, both Wistron and Samsung have produced a

18 substantial amount of confidential proprietary information to

19 one another in the course of the litigation and notwithstanding

20 the obvious breakdown in the deposition process here, I will

21 assume that those confidentiality limitations of the protective

22 order will be obeyed and it would seem to me that would be

23 sufficient protection for Quanta's proprietary and confidential

24 information as well.

25          So I think asking for a five-day notice before a

```
 1  document is used really ignores the practicalities of what it's
 2  like to get a case ready for trial, Mr. Weid.  I think that's
 3  really not necessary and would impose an undue limitation on
 4  the ability of the parties to use this information.
 5           MR. WIED:  Okay.  We understand your Honor and we
 6  will then withdraw our request and trust the parties to guard
 7  this as well -- Quanta's confidential information as well as
 8  they protect their own.  And I'm sure the Court will -- will
 9  also be keeping an eye on all of the confidential information
10  in the case.
11           Beyond that point, I believe Mr. Davis was correct
12  that the issues have been resolved.  Certainly, with respect to
13  technical information, as I indicated, we are withdrawing our
14  objection to Samsung producing those documents.
15           And I believe that the damages report with the sales
16  information redacted has been produced, as your Honor suggested
17  during the last teleconference.  I don't know if there is still
18  an issue on that point.
19           MR. DAVIS:  From Wistron, I don't think there is on
20  the sales report issue.
21           THE COURT:  All right.  Anything else?
22           MR. DAVIS:  Your Honor, with respect to the
23  third-party documents, the notion that we talked about
24  Wednesday that we were going to bring up again today was this
25  concept of we are not quite sure what other third-party
```

```
 1   documents are being withheld.  In Ms. LaPierre's letter she

 2   identified and included the interrogatory -- excuse me, the

 3   document request and Samsung's objections in which they

 4   objected to virtually all of the document requests, at least

 5   partially on the basis that there was -- that it may disclose

 6   third-party confidential documents.  And without some sort of

 7   log provided by Samsung that indicates whether or not they are

 8   withholding a document based on this third-party

 9   confidentiality, we have no way of tracking what documents have

10   been withheld.

11           So far the only log that has been produced by Samsung

12   only identifies attorney-client privilege or work product

13   documents.  It does not indicate that any documents have been

14   withheld on the basis of third-party privilege.  And there may

15   very well be no other documents other than the ones we have

16   discussed with the Court that have been withheld, but we have

17   no way of knowing that.

18           THE COURT:  Very well.  Mr. Lim, can you enlighten us

19   on that subject?

20           MR.LIM:  Absolutely, your Honor.

21           With regard to the third-party confidentiality issue,

22   Samsung -- it was our practice once we identify any documents

23   containing third-party confidential information, we identify

24   those third parties to whom Samsung owed the obligation of

25   confidentiality and ask for the party's permission for Samsung
```

1  to produce.  And all of the parties we have contacted so far

2  every one has given Samsung permission to produce and we have

3  done so.  And the only exception is with Quanta and with

4  regards to their documents in question.

5      As of today the only two -- I believe there are only

6  two remaining documents that Samsung is withholding.  One is

7  the attachment -- I believe there are two attachments to

8  Dr. Wetig's report, which we will produce either end of today

9  or the first thing Monday morning.

10      And, also, I believe there is a couple other

11  attachments to doctor -- it was Quanta's expert basically and

12  Quanta also objected to that attachment as well.  So in light

13  of today's discussion or ruling, we will be producing that as

14  we will either by the end of today or first thing Monday

15  morning.

16      As recent as of yesterday, we now recently identified

17  one more agreement between a third party, which that agreement

18  calls for Samsung allowing the third party, in this case it's

19  Renaissance, your Honor.  And we will be contacting Renaissance

20  either at the end of the day today or first thing Monday

21  morning to ask Renaissance permission to allow Samsung to

22  produce that agreement in this action and once we receive that

23  permission, we will be producing that agreement as well.

24      So other than that I have just discussed, there are

25  no other documents that I'm aware of at this point that we are

1    withholding based on third-party confidentiality objection.

2         **THE COURT:**  All right.  Well, I will ask you,

3    Mr. Lim, to include the situation with respect to Renaissance

4    in your report which you are going to file at noon on Monday

5    when you report in on how you and your client wish to proceed

6    with respect to further depositions in the case.

7              But I want to make it clear that until the Court

8    makes a further order, all further deposition discovery in the

9    case is put on hold.

10             All right?  Anything further?

11        **MS. LA PIERRE:**  Yeah, your Honor.  I have one more

12   issue.  It deals with number three in my letter submitted

13   yesterday, the inventorship details.

14        **THE COURT:**  All right.

15        **MS. LA PIERRE:**  During our last conference call, you

16   asked Samsung to provide a supplemental response and they did,

17   indeed, provide one.

18             However, the response only cites to two documents

19   that they state are privileged, neither of which, number one,

20   we believe to be privileged and, number two, it still is an

21   inadequate response to this interrogatory.

22        **THE COURT:**  Well, did you include the response to

23   Wistron's interrogatory number one in the materials you

24   submitted?

25        **MS. LA PIERRE:**  Yes, I did, in the --

1          THE COURT:  Where is that?

2          MS. LA PIERRE:  In the June 6th letter.

3          THE COURT:  The June 6 letter.  Okay, hold on.  Let

4   me get that.

5          (Brief pause.)

6          THE COURT:  I had the impression that you said that

7   Samsung just supplemented its response to interrogatory number

8   one?

9          MS. LA PIERRE:  They did.  They did yesterday

10  afternoon.

11         THE COURT:  Well, do I have that supplement?  Do I

12  have that supplemental response?

13         MS. LA PIERRE:  No, you don't.  Given the timing of

14  their filing and our preparation of this letter, they

15  overlapped.

16         THE COURT:  All right.  Well, I can understand that.

17         MS. LA PIERRE:  And I can attest to the fact that

18  their response was exactly the same.  They had four additional

19  lines and those lines merely stated that -- made reference to

20  two documents which they believed, although responsive, were

21  privileged.  Neither of have, as I say before, are privileged

22  nor are they responsive.

23         THE COURT:  Well, why don't you in the -- in the

24  submission that you are going to be making on Monday include a

25  copy of the supplemental response.

1              MS. LA PIERRE:  Okay.

2              THE COURT:  So that I can see it in black and white,

3    compare it to the interrogatory, and at least have a clearer

4    picture of what, if any, problem exists with that response.

5              MS. LA PIERRE:  And, your Honor, I will also provide

6    their response to our interrogatory number 13 so that we can

7    address that issue as well.

8              THE COURT:  That will be fine.

9              MS. LA PIERRE:  Great.  Thank you.

10             THE COURT:  All right?

11             MS. LA PIERRE:  Okay.

12             THE COURT:  Very well, counsel.  I will look forward

13   to your response 12:00 noon on Monday.  Have a pleasant

14   weekend.

15             (Whereupon, further proceedings in the

16              above matter were adjourned.)

17

18                              --oo--

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 07-4748 VRW, WISTRON CORPORATION versus SAMSUNG ELECTRONICS CO., LTD were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, June 20, 2008