1  MARK D. FOWLER, Bar No. 124235
   mark.fowler@dlapiper.com
2  ELIZABETH DAY, Bar No. 177125
   elizabeth.day@dlapiper.com
3  TIMOTHY LOHSE, Bar No. 177230
   timothy.lohse@dlapiper.com
4  SAL LIM, Bar No. 211836
   sal.lim@dlapiper.com
5  GREGORY J. LUNDELL, Bar No. 234941
   greg.lundell@dlapiper.com
6  ERIK R. FUEHRER, Bar No. 252578
   erik.fuehrer@dlapiper.com
7  DLA PIPER US LLP
   2000 University Avenue
8  East Palo Alto, CA 94303-2214
   Tel: 650.833.2000
9  Fax: 650.833.2001

10  Attorneys for Defendant and Counterclaim-Plaintiff
    SAMSUNG ELECTRONICS CO., LTD.

11

12               UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15

16  WISTRON CORPORATION, a Taiwan          CASE NO. C-07-4748 VRW
    corporation,
17                                          **SAMSUNG ELECTRONICS CO.,**
                Plaintiff and Counter-      **LTD.'S MOTION FOR**
18              Defendant,                   **RECONSIDERATION REGARDING**
                                             **DOCUMENT NOS. 857 AND 987**
19          v.
                                             Date: September 11, 2008
20  SAMSUNG ELECTRONICS CO., LTD., a        Time: 2:30 pm
    Republic of Korea corporation,          Courtroom 6
21                                          Judge: Chief Judge Vaughn R. Walker
                Defendant and Counter-
22              Plaintiff.

23  SAMSUNG ELECTRONICS CO., LTD.,

24              Counterclaim-Plaintiff,

25          v.

26  WISTRON CORPORATION, and
    WISTRON INFOCOMM (TEXAS)
27  CORPORATION,

28              Counterclaim-Defendants.

# TABLE OF AUTHORITIES

**Page**

## CASES

*Automed Techs v. Knapp Logistics & Automation, Inc.*,
    382 F. Supp. 2d 1372 (N.D. Ga. 2005) ................................................. 5, 6

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
    2003 U.S. Dist. LEXIS 27543, 2003 WL 22225580
    (N.D.N.Y. Sept. 17, 2003) ................................................................... 7

*In re Ampicillin Antitrust Litig.*,
    81 F.R.D. 377 (D.D.C. 1978) ............................................................... 7

*In re Spalding Sports Worldwide, Inc.*,
    203 F.3d 800 (Fed. Cir. 2000) .............................................. 1, 5, 6, 7, 8

*Knogo Corp v. U.S.*,
    213 U.S.P.Q. 936 (Ct. Cl. 1980) ..................................................... 5, 6, 8

*TeKnowledge Corp. v. Akamai Techs., Inc.*,
    2004 U.S. Dist. LEXIS 19109, 2004 WL 2480705
    (N.D. Cal. Aug. 10, 2004.) ................................................................... 8

*Unigene Labs., Inc. v. Apotex, Inc.*,
    2007 U.S. Dist. LEXIS 78410, 2007 WL 2972931
    (N.D. Cal. Oct. 10, 2007) ................................................................... 8

*Venitron Med. Prods., Inc. v. Baxter Labs., Inc.*,
    186 U.S.P.Q. 324 (D.N.J. 1975) ........................................................... 7

1               **NOTICE OF MOTION AND MOTION**

2         **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3         **NOTICE IS HEREBY GIVEN** that on September 11, 2008, at 2:30 PM, or as soon

4 thereafter as counsel may be heard by the above-titled court, located at 450 Golden Gate Avenue,

5 San Francisco, CA 94102, Defendant and Counterclaim-Plaintiff Samsung Electronics Co., Ltd.,

6 ("Samsung") will and hereby does move the Court for reconsideration of the Court's June 18,

7 2008, order requiring Samsung to produce the documents identified as nos. 857 and 987 on its

8 privileged document log.

9            **STATEMENT OF THE ISSUE TO BE DECIDED**

10         Samsung moves this Court for an order that documents identified as nos. 857 and 987 on

11 its privileged document log are privileged and protected from disclosure.

12          **MEMORANDUM OF POINTS AND AUTHORITIES**

13 **I.**      **INTRODUCTION**

14         Samsung submits this motion for reconsideration of the Court's June 18, 2008, order

15 requiring Samsung to produce the documents identified as nos. 857 and 987 on its privileged

16 document log. As confirmed by the contents of these two documents, by contemporaneous

17 documents related thereto, and by declarations from the relevant in-house counsel, each of these

18 two confidential documents is an invention disclosure form ("IDF") prepared and submitted by an

19 inventor to an attorney primarily in order to obtain legal advice concerning patentability, to

20 determine whether a patent application should be filed, and to assist in the preparation of a patent

21 application. These two documents therefore are privileged and protected from disclosure under

22 *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000).

23 **II.**     **PROCEDURAL BACKGROUND**

24         On June 18, 2008, the Court ordered that Counterclaim-Plaintiff Samsung Electronics Co.,

25 Ltd. ("Samsung") produce document nos. 857 and 987 on its privileged document log to

26 Counterclaim-Defendants Wistron Corp. and Wistron InfoComm (Texas) Corp.'s (collectively

27 "Wistron"). Samsung submitted copies of document nos. 857 and 987 to the Court for *in camera*

28 review on June 25, 2008. The Court granted Samsung's request to file a motion for

1    reconsideration on July 21, 2008.

2    **III.    FACTUAL BACKGROUND**

3        **A.    Document No. 857**

4        As indicated on Samsung's privileged document log, and as reflected by the document

5    itself (which previously was provided to the Court for its *in camera* review), document no. 857 is

6    an IDF submitted by Edward Mann, the named inventor on United States Patent No. 6,523,100

7    (the '100 patent"), to the Wang Laboratories, Inc. Patent Department (Wang was the then owner

8    of these patent rights).  Declaration of Erik Fuehrer In Support of Samsung's Motion for

9    Reconsideration ("Fuehrer Decl.,), ¶2, Ex. A. As set forth in the Declaration of Gordon E.

10   Nelson ("Nelson Decl.") submitted herewith, Wang's patent department was part of Wang's in-

11   house legal team.  Nelson Decl., ¶3. Mr. Nelson, an attorney registered to practice before the

12   PTO, was a member of Wang's patent department at the time document no. 857 was prepared and

13   submitted to the patent department.  Nelson Decl., ¶¶1-2.

14       Wang employees used IDFs to present their inventive work to Wang's patent department

15   for evaluation of patentability.  Nelson Decl., ¶3. Each Wang IDF is directed to the "Wang

16   Patent Department" and includes the language "COMPANY CONFIDENTIAL" at the bottom of

17   the page.  It was Wang's policy that IDFs completed by Wang employees remain confidential.

18   Nelson Decl., ¶4. An IDF received by the Wang patent department was marked with a stamp

19   identifying that the document was "RECEIVED" by the Wang Patent Group.  Nelson Decl., ¶5.

20       The Wang IDF contains space for the inventor to include the following information: (1)

21   the descriptive title of idea; (2) the inventor's name, employee number, department, extension,

22   mailbox, and manager; (3) description and purpose of the invention; (4) the product or program;

23   (5) former approaches and disadvantages; (6) features believed to be novel; (7) advantages of idea

24   over former approaches; (8) alternatives or improvements, present or planned; (9) commercial

25   applications or uses; (10) a sketch of the invention; (11) anticipated announcement or

26   demonstration date; and (12) signatures of the submitters.  Nelson Decl., ¶6.

27       Before the Wang patent department could approve spending company resources to seek

28   patent protection on an invention, it was Wang's policy to have its in-house counsel in the patent

1    department review each IDF to evaluate and approve the disclosed invention's patentability. If

2    Wang's patent department approved an IDF for patenting, it was Wang's general practice to

3    provide the IDF to outside counsel for further analysis of the invention and preparation of a patent

4    application. Alternatively, Wang's in-house legal counsel would prepare a patent application.

5    Nelson Decl., ¶8.

6         Wang's patent attorneys used the IDF to gather information to enable them to analyze and

7    evaluate the patentability of the disclosed invention. Before deciding to move forward with

8    patent protection on the invention disclosed in an IDF, Wang's in-house counsel analyzed and

9    evaluated the information collected from Wang employees on the IDF for at least the following

10   purposes: (1) establishing that patenting of the invention was not precluded by any of the

11   statutory bars (i.e., that the invention met the criteria for patenting); (2) determining a conception

12   date for the invention; (3) identifying steps from conception to reduction to practice; and (4)

13   discussing prior art known to the employee who submitted the IDF with the employee. Nelson

14   Decl., ¶9.

15        On June 25, 2008, Samsung submitted to the Court for its *in camera* review two

16   additional documents from the Wang Patent Department. The first document, dated November 4,

17   1987, is a memorandum from Michael Shanahan, Wang's Chief Patent Counsel, to Edward

18   Mann, the inventor of the '100 patent. The contents of this privileged document confirms the fact

19   that the IDF was received by in-house counsel, that the IDF would be reviewed to determine

20   whether a patent should be pursued, and that the process had been assigned to Mr. Nelson for

21   handling. The second document, dated December 6, 1988, is a letter from Mr. Nelson to Harry

22   Smith at Perman & Green (outside counsel responsible for the prosecution of the '100 patent).

23   The contents of this privileged document confirms the fact that the IDF was provided for use in

24   preparing a patent application.

25   ///

26   ///

27   ///

28   ///

DLA PIPER US LLP
EAST PALO ALTO

WEST\21480124.4

SAMSUNG'S MOTION FOR RECONSIDERATION
CASE NO. C-07-4748 VRW

1     **B.**    <u>Document No. 987</u>[1]

2        As also indicated on Samsung's privileged document log, as well as by the document

3   itself, document no. 987 is an IDF submitted by Roy Tanikawa and Hien Le, the named inventors

4   on the '275 patent, to the AST Research, Inc. Legal Department (AST was the then owner of

5   these patent rights). Fuehrer Decl., ¶2, Ex. A. As set forth in the Declaration of Randall Wick

6   ("Wick Decl.") submitted herewith, Mr. Wick developed the AST IDF to capture information

7   about potentially patentable inventions and to enable AST's in-house legal team to analyze and

8   evaluate the patentability of disclosed inventions. Wick Decl., ¶¶3, 10. An IDF completed by an

9   AST employee would be marked by the AST in-house legal team as "AST CONFIDENTIAL,"

10   and a stamp indicating the date of receipt. It was AST's policy that IDF forms completed by AST

11   employees would remain confidential. Wick Decl., ¶5. In general, the AST IDF contains at least

12   the following information: (1) an invention title; (2) each inventor's current contact information;

13   (3) dates and location of conception; (4) dates, locations, and results of any testing of the

14   invention; (5) details of any publication information related to the invention; (6) details of any

15   sales or public uses of the invention; (7) details of related patent applications; (8) details of AST

16   products that use or will use the invention; (9) a sketch of the invention; (10) a written description

17   of the invention, including background of the invention; and (11) signatures for each of the

18   inventors. Wick Decl., ¶9.

19        AST employees used the IDF to present their inventive work to AST's patent committee

20   (which included at least one member from AST's Legal Department) for evaluation of

21   patentability, and AST's in-house legal team evaluated the information disclosed in the IDF for at

22   least the following purposes: (1) establishing that patenting of the invention was not precluded by

23   any statutory bars; (2) providing a conception date for the invention; (3); identifying the

24   inventors; (4) identifying the citizenship of the inventors; (5) identifying steps from conception to

25   reduction to practice; (6) identifying and evaluating any significant prior art; and (7) gathering

26

27    [1] The Court's June 18, 2008, Order references document no. 987 on Samsung's privilege log. Since this Order, an amendment to Samsung's privilege log resulted in the renumbering of that document to document no. 986. This change is apparent in Samsung's Third Amended Privilege Log, excerpts of which are attached to the Fuehrer

28   Declaration.

1    descriptive information about the invention for preparation of any patent applications.  Wick.

2    Decl., ¶10.  Each IDF was reviewed by the patent committee and if it the invention was approved

3    for patentability, it was AST's general practice to either provide the IDF to outside counsel for

4    further analysis of the invention and preparation of a patent application or AST's in-house Legal

5    Department would prepare the patent application.  Wick Decl., ¶¶6-7.

6    **IV.    ARGUMENT**

7            The party invoking the attorney-client privilege has the burden of proving that an

8    attorney-client relationship exists and that the particular communications were confidential.

9    *Automed Techs v. Knapp Logistics & Automation, Inc.*, 382 F. Supp. 2d 1372, 1375 (N.D. Ga.

10   2005).  "To determine if a particular communication is confidential and protected by the attorney-

11   client privilege, the privilege holder must prove the communication was (1) intended to remain

12   confidential and (2) under the circumstances was *reasonably* expected and understood to be

13   confidential."  *Id.*

14           Federal Circuit precedent governs "the issue of whether the attorney-client privilege

15   applies to an invention record prepared and submitted to in-house counsel relating to a litigated

16   patent."  *In re Spalding*, 203 F. 3d at 803-04.[2]  The Federal Circuit holds "that an invention

17   record constitutes a privileged communication, as long as it is provided to an attorney 'for the

18   purpose of securing primarily legal opinion, or legal services, or assistance in a legal

19   proceeding.'"  *Id.* at 805 (quoting *Knogo Corp v. U.S.*, 213 U.S.P.Q. 936, 940 (Ct. Cl. 1980).  The

20   IDF in *Spalding* "was submitted by the inventors of the '178 patent to Spalding's *legal*

21   department."  *Id.* at 805 (emphasis in original).   In concluding the particular IDF before it in

22   *Spalding* was privileged, the Federal Circuit further stated:  "It is enough that the overall tenor of

23   the document indicates that it is a request for legal advice or services.  Moreover, it is not

24   necessary to expressly request confidential legal assistance when that request is implied."  *Id.* at

25   806.  Based upon the facts before it in *Spalding*, the Federal Circuit concluded:  "Accordingly,

26   ---

[2] The Federal Circuit defined "invention records" as "standard forms generally used by corporations as a means for
inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent
27   action.  They are usually short documents containing space for such information as names of inventors, description
and scope of invention, closest prior art, first date of conception and disclosure to others, dates of publication etc." *Id.*
28   at 802, n.2.

1    since Spalding's invention record was prepared and submitted primarily for the purpose of

2    obtaining legal advice on patentability and legal services in preparing a patent application, we

3    conclude that it is privileged in its entirety." *Id.*

4            Here, both document no. 857 and document no. 987 are confidential IDFs. Both IDFs

5    were submitted by a named inventor to an in-house legal department.   Both IDFs were created,

6    submitted and received for the primary purpose of in-house counsel analyzing the potential

7    patentability of an invention and determining whether a patent application should be pursued on

8    behalf of the company and, a determination having been made that an application should be

9    pursued, for the purposes of assisting prosecution counsel in preparing a patent application.

10   Further, although Samsung has submitted evidence in the form of declarations (and, in the case of

11   the Wang IDF, corroborating contemporaneous documents) regarding the purposes of the IDFs,

12   the "overall tenor" of the IDFs themselves indicates they constitute requests for legal services.

13   Accordingly, both IDFs meet the criteria of an attorney-client privileged document under the

14   standards set forth in *Spalding* and *Automed*. *In re Spalding*, 203 F. 3d at 805-06; *Automed*

15   *Techs*, 382 F. Supp. 2d at 1375.   Furthermore, in terms of material facts, the present case is

16   factually indistinguishable from *Spalding*. *In re Spalding*, 203 F. 3d at 805-06.

17           In its July 21, 2008 Order (the "Order"), the Court invited the parties to consider the

18   contours of *Spalding*.   In its Order, the Court noted, by reference to authority, that a patent

19   application may be prepared by a patent agent.   Here, however, the requests for legal services

20   were made to attorneys rather than to patent agents.  This case, therefore, does not raise the issue

21   of whether an IDF submitted by an inventor to a patent agent is privileged.

22           The facts of the present case also are not limited to using an IDF to prepare a patent

23   application. Rather, the initial purpose of the IDFs in both instances was to permit in-house

24   counsel to perform a legal analysis of the potential patentability of the inventions described in the

25   IDFs. The IDFs were designed by counsel for that purpose, they were submitted to and received

26   by counsel for that purpose, and they were used by counsel for that purpose.  This case is in no

27   material respects different than any other situation in which a client communicates confidential

28   information to its counsel for the purposes of obtaining legal services from counsel.  In this

1    regard, the Federal Circuit's ruling in *Spalding* is not limited to the use of IDFs for the

2    preparation of patent applications – that ruling extends to securing any legal advice or legal

3    services. *In re Spalding*, 203 F. 3d at 805-06.

4          Moreover, the attorney-client privilege can apply to communications with a patent agent

5    registered to practice before the PTO. *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 393

6    (D.D.C. 1978); *see also Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 2003 U.S. Dist. LEXIS

7    27543, at **11-15, 2003 WL 22225580, at *4 (N.D.N.Y. Sept. 17, 2003) ("While those cases

8    denying attorney-client protection to communications with a registered patent agent draw some

9    support from a strictly mechanical application of the governing attorney-client principles, the

10   result does injustice to the privilege and the strong policy considerations which form its

11   foundation."); *Venitron Med. Prods., Inc. v. Baxter Labs., Inc.*, 186 U.S.P.Q. 324, 325 (D.N.J.

12   1975) (". . . the substance of the function, rather than the label given to the individual registered

13   with the Patent Office, controls the determination here."). Accordingly, the possibility that an

14   IDF might, under some unknown circumstances, be submitted to a patent agent for use in

15   preparing a patent application – a fact not presented by this case – is not grounds for concluding

16   that an IDF submitted by a client to an attorney, for the purpose of the attorney providing legal

17   services, is not a privileged document.

18         Samsung also requests that the Court consider the following in evaluating an issue. One

19   quintessential legal function performed by many attorneys is to communicate with their clients

20   about potential contracts and to assist their clients in analyzing and drafting contracts. Samsung

21   does not believe there is any dispute that such communications – assuming they occur in

22   confidence – are presumptively attorney-client privileged communications. This is true even

23   though certain types of contracts can be analyzed, drafted, negotiated on behalf of a client by

24   someone other than an attorney – such as is the case in California with real estate brokers and

25   residential real estate contracts. An actual attorney-client privileged communication between a

26   client and a real estate attorney concerning the analysis and preparation of a draft real estate

27   contract does not become any less privileged simply because that client could have used a broker

28   instead.

1    The Court's Order also suggests that a correct interpretation of *Spalding* may be that only

2    portions of an IDF may be privileged.  However, the facts of the present case establish that the

3    purpose of the entire communication set forth in each IDF was for the purpose of obtaining and

4    enabling the performance of legal services.  The facts of this case are therefore not such that one

5    part of the IDFs can be held privileged while other parts can be held not privileged.

6    Moreover, even if the facts of this case were such that such a division were appropriate

7    (which is not the case here), there is no logical place of demarcation in the IDFs between the

8    privileged communications and any allegedly non-privileged communications.  In this regard, it

9    would be incorrect to deem "technical" information in the IDFs non-privileged.  *Knogo Corp.* 213

10   U.S.P.Q. 936 (courts should apply the normal requirements of the attorney-client privilege to

11   technical communications, because the patent application process is a cooperative effort between

12   attorney and client).   This District has followed the *Knogo* approach in at least two cases

13   "because technical information communicated to a patent attorney does not warrant different

14   treatment than any other information communicated to an attorney in the process of obtaining

15   legal services." *Unigene Labs., Inc. v. Apotex, Inc.*, 2007 U.S. Dist. LEXIS 78410, at **7-8, 2007

16   WL 2972931, at *2 (N.D. Cal. Oct. 10, 2007); *TeKnowledge Corp. v. Akamai Techs., Inc.*, 2004

17   U.S. Dist. LEXIS 19109, at *6, 2004 WL 2480705, at *2 (N.D. Cal. Aug. 10, 2004.)  Samsung

18   submits that the analysis in the *Knogo*, *Unigene* and *TeKnowledge* cases is correct.

19   **V.     CONCLUSION**

20   For all of the foregoing reasons, Samsung respectfully requests that the Court find that

21   document nos. 857 and 987 are protected by the attorney-client privilege and need not be

22   produced to Wistron.

23   Dated:  August 4, 2008

24                                                 DLA PIPER US LLP

25                                                 By:/s/ Mark Fowler
                                                   MARK FOWLER

26                                                 Attorneys for Defendant & Counterclaim-
                                                   Plaintiff
27                                                 SAMSUNG ELECTRONICS CO., LTD

28

DLA PIPER US LLP
EAST PALO ALTO

WEST\21480124.4

-8-