```
 1  MARK D. FOWLER, Bar No. 124235
    mark.fowler@dlapiper.com
 2  ELIZABETH DAY, Bar No. 177125
    elizabeth.day@dlapiper.com
 3  TIMOTHY LOHSE, Bar No. 177230
    timothy.lohse@dlapiper.com
 4  SAL LIM, Bar No. 211836
    sal.lim@dlapiper.com
 5  GREGORY J. LUNDELL, Bar No. 234941
    greg.lundell@dlapiper.com
 6
    DLA PIPER US LLP
 7  2000 University Avenue
    East Palo Alto, CA 94303-2214
 8  Tel: 650.833.2000
    Fax: 650.833.2001
 9
    Attorneys for Defendant and Counter-Plaintiff
10  SAMSUNG ELECTRONICS CO., LTD.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WISTRON CORPORATION, a Taiwan corporation,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Republic of Korea corporation,<br><br>    Defendant and Counter-Plaintiff.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>WISTRON CORPORATION, and WISTRON INFOCOMM (TEXAS) CORPORATION,<br><br>    Counterclaim-Defendants. | CASE NO. C-07-4748 VRW<br><br>**DECLARATION OF GORDON ("GENE") E. NELSON** |

1  I, Gordon ("Gene") E. Nelson, declare:

2  1.  I am an attorney licensed to practice law in Massachusetts and before the United States Patent and Trademark Office. I am currently a patent attorney in Rowley, Massachusetts. I know the following of my personal knowledge and, if called as a witness, could and would competently testify thereto.

3  2.  From 1984 to 1989, I was an employee of Wang Laboratories, Inc. ("Wang"). During my employment at Wang I served as in-house patent counsel for the company and was a member of the Wang Patent Department. Part of my job responsibilities included the evaluation and analysis of Invention Disclosure Forms ("IDF") submitted by Wang employees, the prosecution of patents on behalf of Wang and the coordination with outside patent counsel with respect to those patents that outside counsel were prosecuting on behalf of Wang. During my employment at Wang, Michael Shanahan was the head of the Wang Patent Department.

4  3.  Wang's employees used an IDF to present their inventive work to Wang's Patent Department for evaluation of whether a patent application should be filed on the inventive work described in the IDF. The Wang Patent Department was headed and staffed by patent attorneys and included patent agents. The Wang Patent Department was part of the Wang in-house legal team.

5  4.  Wang's IDF is addressed to the "Wang Patent Department, M/S 014-B7D" and includes the language "COMPANY CONFIDENTIAL" at the bottom of each page. It was Wang policy that IDF forms completed by Wang employees remain non-public documents.

6  5.  Wang's IDF included a field designated "FOR PATENT DEPARTMENT USE ONLY." Upon receipt of an IDF, and for the purpose of recording receipt, the Wang Patent Department applied a "RECEIVED" stamp and a date-stamp to the "FOR PATENT DEPARTMENT USE ONLY" field.

7  6.  The Wang IDF suggests that the inventor include the following information: (1) the descriptive title of idea; (2) the inventor's name, employee number, department, extension, mailbox, and manager; (3) description and purpose of the idea; (4) the Wang product or program to which the idea pertained; (5) former approaches and disadvantages; (6) features believed to be

-2-

1  novel; (7) advantages of idea over former approaches; (8) alternatives or improvements, present
2  or planned; (9) commercial applications or uses; (10) a sketch of the idea; (11) anticipated
3  announcement or demonstration date; and (12) the signature of the submitter.
4      7.    Before the Wang Patent Department could approve spending company resources
5  to file and prosecute a patent application on an idea described in an IDF, it was Wang's policy to
6  have its Patent Department review the IDF to evaluate the idea and determine whether a patent
7  application should be filed. Central to this determination was Wang's Patent Department's
8  conclusion that commercially valuable claims could legally be obtained for the idea described in
9  the IDF. If such claims could not be obtained, the Patent Department advised Wang against filing
10 an application on the IDF.
11     8.    If Wang's Patent Department approved the filing of an application on an invention
12 described in an IDF, it was Wang's general practice to provide the IDF to outside counsel for
13 further analysis of the invention and preparation of a patent application. Alternatively, a patent
14 attorney or agent in the Patent Department would prepare a patent application.
15     9.    Based on my knowledge as a patent attorney in the Wang Patent Department, the
16 IDF is used to gather information that enables Wang's in-house legal team to analyze and
17 evaluate whether a patent application should be filed on the invention described in the IDF.
18 Before deciding to move forward with patent protection on the invention disclosed in an IDF,
19 Wang's Patent Department did at least the following with regard to an invention disclosed in an
20 IDF: (1) determining that patenting of the invention was not precluded by any statutory bars; (2)
21 determining a conception date for the invention; (3) identifying steps from conception to
22 reduction to practice; and (4) discussing prior art known to the submitter of the IDF with the
23 submitter.
24 ///
25 ///
26 ///
27 ///
28 ///

10. I have reviewed the IDF for the Multiple Mode Memory Module, which resulted in U.S. Patent No. 6,523,100. The IDF for the Multiple Mode Memory Module is a Wang IDF and according to the date-stamp, the Wang Patent Department received it for analysis and evaluation on November 3, 1987.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 4, 2008, at Rowley, Massachusetts.

_____
Gordon ("Gene") E. Nelson