1  Michael J. Bettinger (SBN 122196)
   michael.bettinger@klgates.com
2  Timothy P. Walker, Ph.D. (SBN 105001)
   timothy.walker@klgates.com
3  Harold H. Davis, Jr. (SBN 235552)
   harold.davis@klgates.com
4  Holly Hogan (SBN 238714)
   holly.hogan@klgates.com
5  K&L GATES LLP
   55 Second Street
6  Suite 1700
   San Francisco, California  94105-3493
7  Telephone: 415.882.8200
   Facsimile: 415.882.8220
8

9  Attorneys for Plaintiff and Counterclaim-
   Defendants WISTRON CORPORATION and
10 WISTRON INFOCOMM (TEXAS)
   CORPORATION
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                        SAN FRANCISCO DIVISION

| | |
|---|---|
| 15  WISTRON CORPORATION,<br><br>16                Plaintiff-Counter-<br>                 Defendant,<br>17<br>     vs.<br>18<br>     SAMSUNG ELECTRONICS CO., LTD.,<br>19<br>                Defendant-Counter-<br>20              Plaintiff.<br>21<br>22  SAMSUNG ELECTRONICS CO., LTD.,<br>23              Counterclaim-Plaintiff,<br>24   vs.<br>25  WISTRON CORPORATION, and WISTRON<br>     INFOCOMM (TEXAS) CORPORATION,<br>26<br>                Counterclaim-Defendants. | Case No. C 07-04748 VRW<br><br>**WISTRON CORPORATION AND WISTRON INFOCOMM (TEXAS) CORPORATION'S OPPOSITION TO SAMSUNG ELECTRONICS, INC.'S MOTION FOR RECONSIDERATION**<br><br>[Assigned to Honorable Chief Judge Vaughn R. Walker]<br><br>Date:          September 11, 2008<br>Time:          2:30 p.m.<br>Courtroom:     6 |

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Samsung seeks to cloak two invention disclosure forms (IDFs) – that Samsung acknowledges support the details surrounding critical facts in this litigation – in the attorney-client privilege in order to prevent discovery of them. The central conceit of Samsung's argument is that any attorney-client communication in any way related to the patent prosecution process is necessarily rendered for the purpose of securing legal advice. The problem for Samsung, however, is that Samsung fails to demonstrate that the IDFs were in fact generated by the inventors in order to obtain legal advice. To the contrary, as illustrated by Samsung's own evidence, the IDFs serve a business purpose and thus are not shielded from discovery. Moreover, the IDFs convey factual and technical information to aid in the preparation of a patent application. A line of cases holds that such information is not privileged because the attorney performs a business role in such a communication, and in any event, the client has no expectation of confidentiality in light of the attorney's duty of disclosure to the Patent and Trademark Office. This Court's observation that non-attorneys can prepare patent applications further supports this line of cases. Accordingly, Samsung's motion for reconsideration should be denied.

### II.   STATEMENT OF FACTS

On June 12, 2008, Defendant and Counter-Plaintiff Samsung Electronics Co., Ltd. ("Samsung") supplemented its answer to Wistron's Interrogatory No. 1. (Dkt. #89, ¶ 2.) Samsung's response to this interrogatory regarding the details of conception, reduction to practice, and development of the inventions asserted in the patents-in-suit, cited to the IDFs listed as 857 and 987 on its privilege log. (Id., ¶¶ 3-4.) Document no. 857 is an IDF submitted by Edward Mann to Wang Laboratories, Inc., Patent Department and document no. 987 is an IDF submitted by Roy Tanikawa and Hien Le to AST Research, Inc., Legal Department. (Id., ¶ 5.) Upon receiving Samsung's supplemental response, Wistron submitted a letter to the Court seeking disclosure of these entries on the privilege log because the privilege log did not show that the documents were privileged, and that they presumably only contained factual information  (Id., ¶ 6; Dkt. # 62.)

On June 13, 2008, the parties had a hearing with the Court to discuss on (a) discovery protocol; (b) the production of third party documents; and (c) Samsung's response to Wistron's Interrogatory No. 1. (Dkt. #89, ¶ 7.) On June 16, 2008, the Court ordered Wistron to produce the privilege log in order to consider Wistron's contentions from its June 12, 2008 letter to the Court. (Id., #89, ¶ 8; Dkt. #69.) On June 17, 2008, Wistron produced Samsung's privilege log (Dkt. #89, ¶ 9; Dkt. #71.) On June 18, 2008, the Court ordered Samsung to produce the IDFs that Samsung had withheld on the basis of attorney-client privilege. (Dkt. #89, ¶ 10; Dkt. #72). Thereafter, on July 21, 2008, the Court granted Samsung's motion to reconsider that ruling. (Dkt. #105.)

## III. ARGUMENT

### A. SAMSUNG BEARS THE BURDEN OF DEMONSTRATING THE APPLICABILITY OF THE ATTORNEY-CLIENT PRIVILEGE

As the party seeking to invoke the attorney-client privilege, Samsung bears the burden of demonstrating that the privilege applies; to wit, Samsung must show (1) that legal advice was sought; (2) from a professional legal advisor in his or her capacity as such; (3) that the communication relates to that purpose; (4) that the communication was confidential; (5) by the client; (6) at the client's insistence permanently protected; (7) from disclosure by the client or the advisor; (8) unless the protection is waived. Automed Tech. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga. 2005); Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977). Because the privilege obstructs the search for the truth, it "must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3rd Cir. 1979); see also Herbert v. Lando, 441 U.S. 153, 175 (1979) ("evidentiary privileges in litigation are not favored"). Samsung has failed to meet its burden.

### B. Samsung Fails to Meet Its Burden Because the IDFs are Primarily Business-Related Documents
#### 1. Communications Seeking Business Advice from an In-House Attorney Are Not Privileged

The Federal Circuit has held that an invention disclosure record "…is a privileged communication, *as long as it is provided to an attorney 'for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding'.*" In re Spalding Sports Worldwide,

1  203 F.3d 800, 805 (Fed. Cir. 2000). This authority, however, does not aid Samsung because the IDFs
2  were not provided to counsel for the primary purpose of obtaining legal advice. An in-house lawyer
3  serves dual roles: he or she is both a business advisor as well as a legal advisor. Accordingly his or
4  her receipt of a communication is not necessarily privileged because, *inter alia*, the communication
5  may be seeking business advice. "Legal departments are not citadels in which public, business, or
6  technical information may be placed to defeat discovery and thereby ensure confidentiality." <u>SCM
7  Corp. v. Xerox Corp.</u>, 70 F.R.D. 508, 515 (D. Conn. 1976). Communications with in-house counsel
8  wearing his or her "business counsel hat" rather than his or her "legal counsel hat" are not protected
9  by the attorney-client privilege. <u>AMP, Inc. v. Fujitsu Microelectronics, Inc.</u>, 853 F. Supp. 808, 830
10 (M.D. Pa. 1994). In-house patent attorneys, for example, perform legal functions as well as business
11 functions, such as evaluating the business ramifications of a proposed patent. <u>Union Carbide Corp. v.
12 Dow Chem. Co.</u>, 619 F.Supp. 1036, 1046 (D. Del 1985). "An attorney's involvement in, or
13 recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a
14 transaction." <u>Matter of Fischel</u>, 557 F.2d at 212.

15       **2.   The IDFs Serve a Business Purpose, and Therefore Are Not Privileged**

16       Here, Samsung makes only *ipse dixit* assertions that the IDFs at issue were used primarily to
17 obtain legal advice. Although Wistron does not have access to the IDFs to comment thereon, from
18 the information available it is emanately clear that the entire documents, or at least portions of them,
19 serve business-related, rather than legal purposes. As Samsung itself acknowledges, one of the
20 purposes of the IDFs was "…determining whether a patent application should be pursued on behalf
21 of the company." (Mot. at 6:5-8.) That determination is made while the in-house lawyer is wearing
22 his or her "business counsel hat." As Mr. Nelson admitted in his declaration:

> [b]efore the Wang Patent Department ***could approve spending
> company resources*** to file and prosecute a patent application on an idea
> described in an IDF, it was Wang's policy to have its Patent
> Department review the IDF to evaluate the idea and determine whether
> a patent application should be filed. ***Central to this determination was
> Wang's Patent Department's conclusion that commercially valuable
> claims*** could legally be obtained for the idea described in the IDF.

27 (Declaration of Gordon E. Nelson ("Nelson Decl."), ¶7.) Similarly, Mr. Wick notes in his declaration
28 that the IDF was prepared "…***to record information*** about potentially patentable inventions" and that

3                                                                    RECYCLED PAPER

**OPPOSITION TO MOTION FOR RECONSIDERATION**
**Case No.: C 07-04748 VRW**

"AST's employees used the IDF *to present their inventive work to the AST's patent committee* for evaluation of patentability. The AST patent committee included a member of the AST in-house legal team." (Declaration of Randall Wick ("Wick Decl."), ¶¶ 3-4.) The non-legal team members of the AST patent committee clearly were not using the information in the form to render any legal advice. In fact, Mr. Tanikawa, the inventor who submitted one of the IDFs at issue, testified that the IDFs were presented first to engineers, and were only sent to attorneys if approved by the engineers. (Declaration of Harold H. Davis, Jr., ("Davis Decl."), Exh. A (Filed Under Seal) at 99:7-100:14.) Hence, Samsung's own evidence demonstrates that the primary purpose of the IDF was of a business-related nature, rather than obtaining legal advice.

What is not discussed in Samsung's papers is also revealing. As noted in previous filings related to the instant discovery dispute, Samsung has already produced an IDF for the '273 patent. (Dkt. # 88 & 96 Exh., A. (Filed Under Seal)) This document was also produced in previous litigation. (Id.)

Samsung fails to explain why the IDFs at issue are privileged, but the '273 patent IDF is not. Samsung has produced specific documents when it is helpful to their case, but has refused to produce nearly identical documents when a detrimental effect may result. Further, it is telling that Samsung produced no declarations from the inventors who actually submitted the IDFs or the in-house attorneys who reviewed them who could testify regarding their understanding of what they were submitting, whether the IDFs did in fact request legal advice, and whether legal advice was in fact provided.

Perhaps more fundamentally, there is no evidence that the inventors were even the clients of AST in-house attorneys who purportedly reviewed the IDFs. This is not a case in which an inventor seeks his or her own counsel to obtain patent prosecution legal advice. The inventors here provided the IDFs to AST counsel, not their own, and thus could not be seeking legal advice from AST counsel. Discovery in this case illustrates this point. Rather than submit these IDFS to obtain legal advice, the inventors were simply following company policy and were incentivized to submit the IDFs by receiving a bonus. (Davis Decl., Exh. A (Filed Under Seal) at 99:7-14, Exh. B.)

Even the limited information available illustrates that the tenor of the IDFs seek business, and not legal, advice. Accordingly, the IDFs should be produced.

### C. THE IDFs ALSO ARE NOT PRIVILEGED BECAUSE THEY CONVEY FACTUAL AND TECHNICAL INFORMATION TO AID IN COMPLETING A PATENT APPLICATION

#### 1. A Line of Authority Holds that Communication of Such Factual and Technical Information Is Not Privileged

Entirely aside from the foregoing, the IDFs at issue also are not privileged because, as illustrated by the description of the documents by Samsung, the IDFs communicate factual and technical information for use in drafting a patent application. A line of cases in this Circuit and others (i.e. the conduit theory) holds that a communication conveying factual and technical information primarily for aid in completing a patent application, but not calling for legal advice, is not privileged. Jack Winter, Inc. v. Koratran Co., 54 F.R.D. 44, 46-47 (N.D. Cal. 1971); see also Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 504 (E.D.N.Y. 1986) (communications regarding factual and technical information are only privileged when they constitute a request for legal advice); In re Martin Marietta Corp., 856 F.2d 619, 623 (4th Cir.1988) (citations omitted) ("if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege"). In such a circumstance, the patent attorney is acting as a conduit for information to pass to the Patent and Trademark Office or a third party. Weil Ceramics & Glass, Inc., 110 F.R.D. at 505; Jack Winter, Inc., 54 F.R.D. at 47. According to Samsung, however, even communications of factual and technical information in the IDF are shielded from discovery by the attorney-client privilege. This should not be the law.

//
//
//
//
//
//

### 2. The Conduit Theory Line of Cases Is the Most Persuasive

*a.* The Rationale Underlying the Conduit Theory Is Sound

Although, as Samsung notes (Mot. at 8:6-18), some courts including the In re Spalding Court have disagreed with the conduit theory, case law supporting the theory is far more persuasive.[1] The rationale underlying the conduit theory is two-fold: (1) a patent attorney uses technical information to provide business services as opposed to legal advice; and (2) a client has no expectation that factual and technical information will remain confidential in light of the attorney's duty of full disclosure to the Patent and Trademark Office. See Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc., 144 F.R.D. 372, 374 (N.D. Cal. 1992). Considering the foregoing, it is difficult to comprehend how such communications of factual and technical information in the IDFs at issue would be privileged.

*b.* The Fact that Non-Attorneys Can Prepare Patent Applications Further Supports the Conduit Theory

Further supporting the conduit theory is this Court's observation that non-lawyers may prepare patent applications. Docket No. 105 at 2:8-22; 37 CFR § 1.32(a)(1) (2005); 37 CFR § 11.6(b) (2004). Samsung, ignoring this Court's order allowing the instant motion, attempts to make much of the fact that (a) some courts have held that the attorney-client privilege may apply to communications with a non-lawyer;[2] and (b) lawyers preparing a patent application, for example, real estate lawyers, may perform tasks that non-lawyers may also perform. (Mot. at 7:4-28). Samsung's argument however, misses the point. The question is not whether the attorney-client privilege may apply to communications with a patent attorney (or a non-lawyer preparing patent applications) in a general sense – which is all that Samsung's argument addresses. Instead, the question is *what types* of communications are privileged. Communications regarding technical and factual information for

---

[1] If portions of the IDF convey technical and factual information, while other portions contain privileged information, the non-privileged technical and factual information along with other non-privileged information should be produced. The lines of cases cited by Samsung in opposition to such a production (Mot. at 6:6-18) does not address whether factual and technical information should be produced while privileged portions redacted, but instead whether or not technical and factual information is privileged in this first instance. As discussed below, such information clearly is not.

[2] Whether such privilege applies to a non-lawyer preparing a patent application has been the subject of disagreement among various federal courts. See Stryker Corp. v. Intermedics Orthopedics, Inc., 145 F.R.D. 298, 304 (E.D.N.Y. 1992); In re Ampicillin Antitrust Litigation, 81 F.R.D. 377, 392 (D.C. D.C. 1978).

1  use in preparing a patent application clearly should not be privileged.[3]  The privilege only "…protects
2  only those disclosures necessary to obtain informed legal advice which might not have been made
3  absent the privilege.  <u>Fisher v. U.S.</u>, 425 U.S. 391, 403 (1976).   Since a non-attorney can prepare a
4  patent application, and accordingly would not be rendering legal advice in that process,[4]
5  communications regarding technical and factual information to aid in that preparation – whether by
6  an attorney or a non-attorney – are not privileged.

        c.    In re Spalding's Rejection of the Conduit Theory Is Based on a Faulty Assumption

9   The suggestion in <u>In re Spalding</u> to the contrary (i.e. that preparing a patent application is the
10  practice of law) hinges on the same conclusion in <u>Sperry v. Florida</u>, 373 U.S. 379, 383 (1963).  The
11  Court in <u>Sperry</u>, however, was considering a different issue, namely, whether a non-attorney
12  preparing patent applications was practicing law in violation of the prohibition against non-attorneys
13  doing so.  <u>Sperry</u>, 373 U.S. at 381-382.  The question here and in <u>In re Spalding</u> is not whether one
14  preparing a patent application is *practicing law*, but whether conveyance of factual and technical
15  information for use in that preparation is *a request for legal advice*.  Nevertheless, the lynchpin of the
16  <u>In re Spalding</u> court's rejection of the conduit theory cases is the court's assumption that all patent
17  prosecution efforts are the practice of law, and therefore involve legal advice.  Both the conduit
18  theory cases and <u>In re Spalding</u> agree that conveyance of information to a patent attorney is only
19  privileged when it involves a request for legal advice.  The difference lies in the conduit theory cases'
20  holding that communicating factual and technical information for the purpose of completing a patent
21  application is not privileged, and <u>In re Spalding</u>'s holding that such information is privileged.
22  However, as discussed above, the rationale underlying the conduit theory cases, as well as this court's

---

[3] The fact that, as Samsung notes, the IDFs were submitted to in-house lawyers prior to lawyers who prepared the patent applications (Mot. at 6:22) is a distinction without a difference.  The documents were used by outside, and in some cases in-house counsel, to prepare patent applications. (Wick Decl., ¶ 6; Nelson Decl., ¶ 8.)  Also insignificant is the fact that attorneys, rather than non-attorneys, handled the patent prosecutions at issue because it does not alter how the ability of non-lawyers to prepare patent applications shapes factual and technical information communicated to attorneys preparing patent applications.

[4] Similarly, using Samsung's real estate lawyer analogy, a real estate lawyer handling a residential real estate contract is not giving legal advice when, for example, the lawyer advises the client on how much to offer to purchase a home.

7

observation regarding the ability of non-lawyers to submit patent applications, lends to the better conclusion that conveying factual and technical information for the purposes of a patent application is not privileged.

### D.  IF THE IDFs ARE FOUND TO BE PRIVILEGED THEN SAMSUNG SHOULD BE PRECLUDED FROM USING THEM TO SUPPORT A CONCEPTION DATE

Samsung cited the IDFs at issue in response to Wistron Interrogatory No. 1. This interrogatory asks Samsung to provide details of conception, reduction to practice, and development of the inventions asserted in the patents-in-suit. Dkt. #67 at 1. Yet, Samsung has refused to produce these critical documents, as well as provide testimony thereon. In Federal Rule of Civil Procedure Rule 30(b)(6) depositions, Samsung's employees have refused to answer questions regarding the details of conception on attorney-client privilege grounds. (Davis Decl, Exh. C (Filed Under Seal) at 151:1-156:19.)

Samsung's litigation strategy has prevented Wistron from obtaining information regarding the basis for its assertion of the conception date of the patents at issue. Accordingly, if the Court concludes that these two IDFs are privileged then the Court should preclude Samsung from relying upon these two documents in order to support a conception date. Samsung's reliance would be unfair to Wistron given the fact that Wistron would not be able to see the documents at issue or obtain testimony thereon. Samsung cannot have it both ways.

//
//
//
//
//
//
//
//
//
//

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Wistron respectfully requests that the Court uphold its prior order that Samsung produce the two IDFs at issue because the documents are not privileged. Alternatively, if the Court finds that portions of the IDFs are privileged, Wistron requests that the Court order Samsung to produce the non-privileged portions. Finally, if the Court finds that the entirety of the IDFs are privileged, Wistron requests an order that Samsung cannot use the two IDFs at issue to prove conception date.

K&L GATES LLP

Dated: August 11, 2008       By:  /s/ *Harold H. Davis, Jr.*
　　　　　　　　　　　　　　　　　Michael J. Bettinger (SBN 122196)
　　　　　　　　　　　　　　　　　Timothy P. Walker, Ph.D. (SBN 105001)
　　　　　　　　　　　　　　　　　Harold H. Davis, Jr. (SBN 235552)
　　　　　　　　　　　　　　　　　Holly Hogan (SBN 238714)
　　　　　　　　　　　　　　　　　Attorneys for Plaintiff and Counterclaim-Defendants WISTRON CORPORATION and WISTRON INFOCOMM (TEXAS) CORPORATION