MARK D. FOWLER, Bar No. 124235
mark.fowler@dlapiper.com
ELIZABETH DAY, Bar No. 177125
elizabeth.day@dlapiper.com
TIMOTHY LOHSE, Bar No. 177230
timothy.lohse@dlapiper.com
SAL LIM, Bar No. 211836
sal.lim@dlapiper.com
GREGORY J. LUNDELL, Bar No. 234941
greg.lundell@dlapiper.com
ERIK R. FUEHRER, Bar No. 252578
erik.fuehrer@dlapiper.com
DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant and Counterclaim-Plaintiff
SAMSUNG ELECTRONICS CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WISTRON CORPORATION, a Taiwan corporation,

Plaintiff and Counter-Defendant,

v.

SAMSUNG ELECTRONICS CO., LTD., a Republic of Korea corporation,

Defendant and Counter-Plaintiff.

SAMSUNG ELECTRONICS CO., LTD.,

Counterclaim-Plaintiff,

v.

WISTRON CORPORATION, and WISTRON INFOCOMM (TEXAS) CORPORATION,

Counterclaim-Defendants.

CASE NO. C-07-4748 VRW

**SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO WISTRON CORP.'S OPPOSITION TO SAMSUNG'S MOTION FOR RECONSIDERATION REGARDING DOCUMENT NOS. 857 AND 987**

Date: September 11, 2008
Time: 2:30 pm
Courtroom 6
Judge: Chief Judge Vaughn R. Walker

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The IDFs Were Communications With In-House Counsel Primarily for the Purpose of Soliciting Legal Advice ..... 2

1. The Nelson and Wick declarations prove that the Wang and AST in-house legal departments used their respective IDFs for legal analysis. ..... 2

2. None of Wistron's citations provide a basis for finding that the IDFs seek business advice ..... 3

3. The disclosure of the IDF for the '273 patent is irrelevant to this analysis ..... 5

B. The IDFs Are Privileged Because They Were Prepared and Submitted Primarily for the Purpose of Legal Advice on Patentability ..... 5

1. Wistron's Opposition cannot succeed unless the Court adopts Wistron's interpretation of the conduit theory, a theory rejected by the Federal Circuit ..... 5

2. In Spalding, the Federal Circuit rejected the Jack Winter line of cases in favor of Knogo ..... 7

3. Non-attorneys' legal ability to prepare patent applications is not dispositive in this case ..... 8

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*AMP, Inc. v. Fujitsu Microelectronics, Inc.*,
853 F. Supp. 808 (M.D. Pa. 1994) ..... 3

*Avago Techs. Gen. IP PTE LTD. v. Elan Microelectronics Corp.*,
2006 U.S. Dist. LEXIS 86292, 2006 WL 3290400 (N.D. Cal. Nov. 13, 2006) ..... 7

*In re Spalding*,
203 F. 3d 800 ..... 4, 5, 6, 7

*Katz v. AT&T Corp.*,
191 F.R.D. 433 (E.D. Pa. 2000) ..... 5

*Knogo Corp. v. United States*,
213 U.S.P.Q. 936, 1980 WL 39083 (Ct. Cl. 1980) ..... 4, 6, 7

*Matter of Fischel*,
557 F.2d 209 (9th Cir. 1977) ..... 4

*SCM Corp. v. Xerox Corp.*,
70 F.R.D. 508 (D. Comm. 1976) ..... 4

*TeKnowledge Corp. v. Akamai Techs., Inc.*,
2004 U.S. Dist. LEXIS 19109, 2004 WL 2480705 (N.D. Cal. Aug. 10, 2004) ..... 7

*Unigene Labs., Inc. v. Apotex, Inc.*,
2007 U.S. Dist. LEXIS 78410, 2007 WL 2972931 (N.D. Cal. Oct. 10, 2007) ..... 7

*Union Carbide Corp. v. Dow Chem. Co.*,
619 F. Supp. 1036 (D. Del. 1985) ..... 3, 4

-ii-

DLA PIPER US LLP
EAST PALO ALTO

SAMSUNG'S REPLY TO WISTRON'S OPPOSITION TO MOTION FOR RECONSIDERATION
CASE NO. C-07-4748 VRW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Wistron's Opposition claims that Document Nos. 857 and 987 on Samsung's Third Amended Privilege Log should be produced because these documents only seek business information, and only serve to communicate technical facts to patent counsel. Wistron is wrong on both counts. Accordingly, Document Nos. 857 and 987 should be protected from discovery, and Samsung's Motion for Reconsideration should be granted.

First, Wistron asserts that the Invention Disclosure Forms ("IDFs") in question cannot be privileged because they only seek business advice from the Wang and AST legal departments. Wistron's claim appears to be based on a misreading of the Nelson and Wick declarations. Furthermore, Wistron cites no authority to support its position that the IDFs in question solicit business, as opposed to legal advice or analysis. The IDFs here each were submitted to a legal department for legal analysis. That a so-called business decision ultimately was made based upon that legal analysis is of no moment in determining whether the attorney-client privilege applies.

Second, Wistron asserts that if documents containing technical information are used to aid in completing a patent application, they cannot be privileged. Wistron's assertion, however, is based on precedent squarely rejected by the Federal Circuit. Moreover, Wistron's precedent does not apply to the factual circumstances in this instance. Here, the IDFs, as evidenced in the Nelson and Wick declarations, were primarily for communicating to in-house patent lawyers for the purpose of determining whether a patent could be obtained. The communications were not simply for the purpose of collecting information so an attorney could fill out application forms and act as nothing more than a conduit of technical information from the inventor to the PTO.

## II. ARGUMENT

Samsung does not contest that it bears the burden of demonstrating the applicability of the attorney-client privilege. As shown in its Motion for Reconsideration and the accompanying declarations, Samsung has met its burden of showing that Document Nos. 857 and 987 were provided by a named inventor to an in-house attorney for the purpose of the attorney providing legal services concerning the patentability of the invention – not for simply business advice.

Wistron chooses not only to ignore the stated purpose and intent behind the creation and use of the IDFs, but also to ignore the Federal Circuit precedent, apparently hoping to convince the Court to follow an older line of cases based on a 1971 District Court opinion.

### A. <u>The IDFs Were Communications With In-House Counsel Primarily for the Purpose of Soliciting Legal Advice.</u>

The IDFs at issue were for the purpose of obtaining legal advice regarding the patentability of inventions. Wistron's selective emphases on certain snippets from the Nelson and Wick declarations do not change the dispositive fact that the IDFs were both submitted to in-house lawyers for analysis of the disclosed inventions' patentability. Nothing in Wistron's argument or cited authority supports its proposition that if a business decision is based on legal analysis, the otherwise privileged communications underlying that analysis become discoverable. Wistron does not contest, and thereby admits, the confidentiality of the IDFs at issue in this motion. Finally, Samsung's decision to produce the IDF for the '273 patent is of no legal consequence as to determining the privileged status of Document Nos. 857 and 987.

#### 1. The Nelson and Wick declarations prove that the Wang and AST in-house legal departments used their respective IDFs for legal analysis.

No reasonable reading of the Wick or Nelson declarations supports Wistron's contention that the IDFs were designed, completed and submitted to in-house counsel to solicit business advice. Wistron focuses on certain phrases in the declarations that it contends show the IDFs were only for the general purpose of assessing an invention's commercial viability. For example, Wistron's Opposition emphasizes choice words from Mr. Nelson's declaration to suggest Wang's in-house counsel was only interested in whether the patent claims were "commercially valuable." Wistron Opp., p. 3 (quoting Nelson Decl., ¶7). But, when the declaration is read as a whole, it is clear Wang's in-house patent counsel was considering whether patent claims "could legally be obtained for the idea described in the IDF." Nelson Decl., ¶7. In other words, in-house counsel was performing legal analysis by examining whether a prospective invention was legally patentable – a predicate and separate investigation than an investigation as to whether patent claims could be commercially valuable upon issuance of a patent.

Similarly, Wistron points out that AST employees presented information about the invention to AST engineers on the AST Patent Committee and concludes (wrongly) that AST's IDF was not used for obtaining legal advice. The suggestion that privilege should be defeated because the invention might also have been discussed with engineers who served on the Patent Committee with in-house counsel is without merit – the primary purpose and actual use of the AST IDF was to enable in-house counsel to perform legal services for the company.

**2. None of Wistron's citations provide a basis for finding that the IDFs seek business advice.**

Not a single case cited in Wistron's Opposition provides a basis for finding that the IDFs at issue, or the information contained therein, are discoverable. None of Wistron's cases discuss or consider the circumstances associated with the IDFs at issue in Samsung's Motion for Reconsideration. Based on this fact alone, Wistron's cases are each distinguishable from this case. The present case is an instance where "[c]ommunications to counsel for the purpose of providing information on which the attorney may make an educated legal evaluation, as well as communications between the attorney and those who will act upon the legal advice, may generally be withheld from discovery." *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1046 (D. Del. 1985).

Although Wistron cites *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 830 (M.D. Pa. 1994), that case is not relevant to the Court's analysis here. First, despite Wistron's suggestive quotations, *AMP* makes no reference to a "business counsel hat" or a "legal counsel hat." Opposition, p. 3. Instead, *AMP* accurately states that "in-house counsel may serve dual functions, acting as both legal counsel and business counsel." *AMP*, 619 F. Supp. at 1046. This, however, is not a basis for finding the privilege waived here. Unlike the *AMP* case, Samsung has provided substantive evidence in the Nelson and Wick declarations of how the IDFs were used in legal analysis. *Cf. id.* ("Plaintiffs merely offer Mr. Trygg's conclusory statement that the memorandum was responsive to his request and that his request involved the rendering of legal advice."). Also, unlike *AMP*, Wistron does not contest Samsung's evidence of the IDFs'

confidentiality. *Cf. id.* ("Further, Plaintiffs have not demonstrated that the memorandum was held in confidence . . ..").

The *SCM* case is also inapposite. *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 515 (D. Comm. 1976). First, the District Court found the documents at issue were, at most, work product, and not confidential communications between attorney and client. Here, there is no question the IDFs are communications between the employees of Wang and AST and their respective in-house legal department. *See Knogo*, 213 U.S.P.Q. at 939 ("A communication, then, by any form of agency employed or set in motion by the client is within the privilege."). Second, the information in *SCM* was "public information (patent numbers, holders, dates of application and issuance), brief descriptions of the patents, and what Xerox characterizes as legal opinions regarding patent applicability." *SCM*, 70 F.R.D. at 515. Unlike *SCM*, the information contained in the IDFs is confidential information. Furthermore, unlike the facts in *SCM*, Samsung is asserting the attorney-client communication privilege over the IDFs, not the work-product privilege, which was the basis for the *SCM* court's finding that the "brief descriptions" and "legal opinions regarding patent applicability" were not protected from discovery. *Id.*

In another case cited by Wistron, *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977), the documents at issue were summaries of the client's transactions with third parties. The court there found that disclosure of the information would in no way infringe on the confidentiality of the attorney-client relationship. *Id.* Here, unlike *Fischel*, each IDF is a confidential communication to in-house counsel for the purpose of receiving a legal opinion on the patentability of an invention. Disclosure of these communications would disclose the bases for the decision by AST and Wang's in-house legal departments to proceed with patent protection on these inventions.

The Federal Circuit has made it clear that the "overall tenor" and the contents of the document indicate that there was either an explicit or an implied "request for legal advice or services." *In re Spalding*, 203 F. 3d at 806. The Nelson and Wick declarations both explain that the IDFs were submitted to an attorney for the purpose of the attorney providing legal advice concerning the invention's patentability, and describe the process by which the IDFs were used in rendering that advice.

**3. The disclosure of the IDF for the ’273 patent is irrelevant to this analysis.**

Wistron insinuates, without citing a shred of authority, that Samsung should be forced to produce the IDFs for the ’100 and ’275 patents because Samsung previously produced the IDF for the ’273 patent. Opposition, p. 4. Wistron’s suggestion is directly contrary to the law. The inquiry regarding the application of the attorney-client privilege related to each patent-in-suit is separate, and a waiver as to the privilege associated with one patent is limited to the subject-matter of that patent. *See, e.g., Katz v. AT&T Corp.*, 191 F.R.D. 433, 440 (E.D. Pa. 2000) (“In determining the scope of the waiver, the Special Master correctly limited the scope of the waiver to the patents at issue in the prior litigation.”). Wistron’s suggestion that the privileged status of the ’100 patent and ’275 patent IDFs is somehow lost because Samsung previously waived privilege as to the ’273 patent IDF is simply without basis.

**B. The IDFs Are Privileged Because They Were Prepared and Submitted Primarily for the Purpose of Legal Advice on Patentability.**

Wistron urges the Court to accept the wrong legal standard in evaluating whether documents containing technical information can benefit from privilege protections under the attorney-client privilege. Regardless of Wistron’s failure to articulate the appropriate standard, the IDFs should remain privileged because they contain information from which AST’s and Wang’s in-house attorneys could form a reasoned opinion regarding patentability as opposed to the kind of raw technical information necessary for completing a patent application. The *Spalding* case remains on point here and dictates that Document Nos. 857 and 987 are privileged because the IDFs are primarily requests for legal advice and analysis.

**1. Wistron’s Opposition cannot succeed unless the Court adopts Wistron’s interpretation of the conduit theory, a theory rejected by the Federal Circuit.**

Wistron correctly recognizes that the Federal Circuit ruled in *Spalding* that when “conveyance of factual and technical information for use in [preparing a patent application] is a *request for legal advice*,” the substance of that conveyance is privileged. Opposition, p. 7 (emphasis in original). Wistron must also recognize that the Federal Circuit analyzed an

invention record in *Spalding* very similar to the IDFs at issue here. *Spalding*, 203 F.3d at 805-06. In response, Wistron urges the adoption of the "conduit theory" line of cases and, wrongly, attributes a faulty assumption to the Federal Circuit in the Federal Circuit's rejection of the same theory in *Spalding*. Opposition, pp. 5-8. The conduit theory, according to Wistron, holds "that communicating factual and technical information for the purpose of completing a patent application is not privileged." Opposition, p. 7. Under its interpretation of the conduit theory, Wistron argues that if a document contains technical information and is *ever* used in the process of patent preparation, that document cannot be privileged. *Id.* By following *Knogo*, however, the Federal Circuit flatly rejected this theory. *Spalding*, 203 F.3d 805-06 & n.3; *see also Knogo Corp. v. United States*, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. 1980) ("The conclusion reached by the authorities in the *Jack Winter* camp rests upon an over-simplification of the role performed by the patent attorney during the patent application process.").

Wistron's attempt to explain away the Federal Circuit's rejection of the conduit theory is likewise wrong. The Federal Circuit did not assume that "all patent prosecution efforts are the practice of law." Opposition, p. 7. Instead, the Federal Circuit noted:

> We are aware of several district court opinions that have held that technical information communicated to an attorney, and documents relating to the prosecution of patent applications are non-privileged, based on the rationale that the attorney is acting as a mere 'conduit' between his client and the Patent and Trademark Office. ***However, these cases did not deal specifically with invention records***, and moreover, they are not binding on this court. We conclude that the better rule is the one articulated in this case.

*Spalding*, 203 F.3d 806, n.3 (emphasis added).

Had the Federal Circuit relied on the faulty assumption attributed to it by Wistron, no differentiation between invention records and other types of documents passed to a patent attorney or agent for the purpose of drafting a patent application would be necessary. Like *Spalding*, the instant case deals with invention records (IDFs) used by AST's and Wang's in-house attorneys to determine whether claims legally can be obtained on the described invention.

**2. In *Spalding*, the Federal Circuit rejected the *Jack Winter* line of cases in favor of *Knogo*.**

In *Spalding*, the Federal Circuit adopted the Court of Claims' holding in *Knogo Corp. v. United States*. *Knogo* was the first blow to conduit theory. In *Knogo*, the Court of Claims analyzed the reasoning underlying the *Jack Winter* line of cases and rejected it. *Knogo Corp*, 213 U.S.P.Q. at 940-41 ("The fact that much of the technical information in one form or another finds its way into the patent application, . . . , should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney."). Unlike the IDFs here, the documents at issue in *Knogo* contained either "purely technical expositions of the invention" or "technical explanations of the general field" and none contained an "express request for legal services." *Id*. at 939. But the court still found it clear that, as with the IDFs at issue here, each was "prepared to provide the attorney with the information necessary to assess the invention's patentability, prepare and file a patent application which led to the patent in suit, and prosecute that patent application through the Patent Office." *Id*. The court held these documents were privileged. *Id.* at 941. As is the case in *Spalding*, it was less important that the documents contained technical information, and more important that the information was communicated from the client to the attorney for a legal purpose — something that should be protected regardless of the particularities of what is communicated.

Since *Knogo*, the Northern District of California consistently has held that the attorney-client privilege applies to invention documents. "This Court is persuaded that *Knogo's* approach is the more appropriate one [as compared with *Jack Winter's* approach], because technical information communicated to a patent attorney does not warrant different treatment than any other information communicated to an attorney in the process of obtaining legal services." *TeKnowledge Corp. v. Akamai Techs., Inc.*, 2004 U.S. Dist. LEXIS 19109, 2004 WL 2480705 (N.D. Cal. Aug. 10, 2004); *see also Unigene Labs., Inc. v. Apotex, Inc.*, 2007 U.S. Dist. LEXIS 78410, 2007 WL 2972931 (N.D. Cal. Oct. 10, 2007) (quoting same); *Avago Techs. Gen. IP PTE LTD. v. Elan Microelectronics Corp.*, 2006 U.S. Dist. LEXIS 86292, 2006 WL 3290400 (N.D. Cal. Nov. 13, 2006) (quoting *Spalding*, 203 F. 3d 800 at 805).

**3. Non-attorneys' legal ability to prepare patent applications is not dispositive in this case.**

The fact that non-attorneys can prepare patent applications does not compel any conclusion here. The fact is that neither Wistron nor Samsung allege that any non-lawyers were involved in the preparation of the '100 or '275 patent, nor that the IDFs were ever provided to a non-lawyer as a basis for preparing a patent application. Instead, the IDFs were provided to in-house counsel for the express purpose of obtaining legal services from counsel concerning the patentability of the invention. As such, the documents are privileged.

## V. CONCLUSION

For all of the foregoing reasons, Samsung respectfully requests that the Court find that Document Nos. 857 and 987 are protected by the attorney-client privilege and should not be produced to Wistron.

Dated: August 28, 2008

DLA PIPER US LLP

By:/s/ Mark Fowler
MARK FOWLER

Attorneys for Defendant & Counterclaim-Plaintiff
SAMSUNG ELECTRONICS CO., LTD